## 26697. TRIPPE *v.* CRESCENT FARMS INCORPORATED.

DECIDED MAY 20, 1938.

*Benton Odom, Benton Odom Jr., Robert Benton Short,* for plaintiff in error.

*James W. Smith, Robert R. Forrester,* contra.

BROYLES, C. J. Crescent Farms Inc. brought an ordinary trover action against Cecil Trippe, doing business as Trippe Motor Company, to recover a "Chevrolet ton and half truck." The defendant admitted his refusal to deliver the truck, and denied the material allegations of the petition. The plaintiff elected to take a money verdict, and the jury returned a verdict against the defendant for $450 and interest. The exception is to the judgment overruling the motion for new trial containing only the general grounds. H. G. Ballard, manager of Crescent Farms Inc., testi-

fied, in substance, that Perry Coyne, the defendant's representative, wanted to trade a Studebaker truck for the plaintiff's Chevrolet truck; that witness told Coyne that he "did not need a truck or automobile then," and took "a credit memorandum for a truck or car;" that they "agreed on the price of a trade;" that about a week thereafter witness "received a contract in duplicate, to which" he "added these words, 'automobile, any size truck;'" that he "then signed and mailed it back to Mr. Trippe;" that, within the time stipulated in the contract, witness saw the defendant and offered to accept a Terraplane automobile at the regular price and "pay him the difference between the contract and the car;" that this offer was refused, and plaintiff lost the truck; that the defendant told witness that "he would not trade . . for a Terraplane automobile, as the profit was less;" that in 1936 witness offered "to take anything he would let me have," and Trippe replied that he (the witness) had waited too long and "wasn't going to get a damn thing;" and that in May or June, 1936, witness demanded the return of the truck. A copy of the contract in question, dated July 9, 1934, and signed by the parties, was introduced in evidence by the plaintiff. The material parts of it are: "Received of Crescent Farms one Chevrolet ton and half truck . . as payment for six months option to purchase a new White or Studebaker ton and half truck, automobile, any size truck. The sole consideration for the receipt of the truck of the said Crescent Farms is their right to purchase the new White or Studebaker ton and half truck and to receive a credit of $450 for the . . Chevrolet truck on the delivered price of the new truck, White or Studebaker, purchased. . . It is agreed that there are no representations made or binding upon either party that are not within contained, and further that this writing can not be changed, except by a subsequent written agreement. It is further agreed that this option to be binding must be signed 'Trippe Motor Co., by Cecil Trippe,' and this option does not apply to used truck." The plaintiff next introduced in evidence the "carbon copy of a letter which the witness H. G. Ballard testified was written and mailed to Trippe Motor Company at the time the contract was returned." It appears from the carbon copy that the letter was dated July 9, 1934, directed to Trippe Motor Company at Albany, Georgia, and signed "Crescent Farms Inc." The letter reads: "Enclosed is the

signed agreement on the truck sale, with a slight change as follows: You stipulate only one size truck to be traded for, a 1½ ton truck, but we believe it ought to cover any size truck we might choose when we are ready to use another, or for an automobile first, which is not likely at all. What we want is a new truck about the middle of January, 1935, and want this credit to be good for the $450 at that time on same at the market price for trucks at the time we get the new one. If this does not meet with your approval, please advise us at this time."

The material part of Cecil Trippe's testimony follows: "I executed a contract with H. G. Ballard, agent for the Crescent Farms Inc., and this is the . . copy of the contract with the exception of the addition of 'automobile, any size truck.' These words were written by another typewriter, and not by me. Mr. Ballard did not within six months after July 9, 1934, offer to accept a new Studebaker or White truck, or any kind of truck. The first time I discussed it with Mr. Ballard subsequent to the signing of this contract was some time between May 15th and June 15th, 1936. . . I did not originally contact Mr. Ballard about trading his automobile. Perry Coyne was working for me, and went out . . to contact Mr. Ballard and brought Mr. Ballard's truck in. I sent out, after he had his truck in my house, the original copy of the contract. Mr. Ballard mailed the contract back to me, with no letter, but with Mr. Ballard's signature on it. . . No letter was with it. Mr. Ballard then came in not earlier than between May 16 and June 16, 1936, and I offered at that time to trade with him, giving him the benefit of my net cost which would be about $350 on the truck between May 15 and June 16, 1936. . . I do not recall seeing Mr. Ballard in my place at any time between the 9th of June, 1934, and January 9th, 1935. I understood that this was an option contract when it was written."

"The consent of the parties being essential to a contract, until each has assented to all the terms the contract is incomplete; until assented to, each party may withdraw his bid or proposition." Code, § 20-108. The defendant assented to the terms of the instrument which he prepared and sent to the plaintiff, but the plaintiff declined to do so, and signed it only after it had been changed by adding to the first sentence thereof the words, "automobile, any size truck." Whether the defendant received the plain-

tiff's letter stating that the instrument had been changed is a disputed question, but it is undisputed that the defendant Trippe received the instrument after it had been changed with "another typewriter," and not by him, and kept it. We think that the facts support the conclusion that the defendant assented to the terms of the instrument as altered by the plaintiff, and that it was a valid contract between them. The construction of unambiguous contracts is for the court, but it is the province of the jury to construe ambiguous contracts. Code, § 20-701; *Pidcock* v. *Nace,* 15 *Ga. App.* 794(3) (84 S. E. 226). "The cardinal rule of construction is to ascertain the intention of the parties." Code, § 20-702. "If the construction is doubtful, that which goes most strongly against the party executing the instrument, or undertaking the obligation, is generally to be preferred." § 20-704, par. 5. "The intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party, and known to be thus understood by the other party, at the time, shall be held as the true meaning." § 20-703. Ambiguities in contracts may be explained by the "attendant and surrounding circumstances." § 20-704, par. 1. Applying the law to the facts, we can not say that the jury were not warranted in concluding that the contract bound the defendant to accept the plaintiff's truck at a trade-in value of $450 on the delivered price of either an automobile or a truck. The evidence also warrants the conclusion that the plaintiff offered to comply with the contract within the stipulated time, and that the defendant rejected the offer and refused to deliver back the Chevrolet truck to the plaintiff. In these circumstances, the plaintiff had the right to consider the contract rescinded and to institute trover proceedings to recover its Chevrolet truck. Of course the plaintiff could elect to take a money verdict for the value of the truck. *Tifton Chevrolet Co.* v. *Mathis,* 44 *Ga. App.* 839 (163 S. E. 308).

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*