21239. COLLINS v. STORER BROADCASTING COMPANY *et al.*

Argued May 9, 1961—Decided June 8, 1961—Rehearing denied June 22 and July 6, 1961.

*Houston White,* for plaintiff in error.

*Eugene T. Branch, Ralph Williams, Jr., Jones, Bird & Howell,* contra.

Almand, Justice. The judgment under review is one sustaining the general demurrers of the demurring defendants to a petition seeking equitable and legal relief.

The petition of John W. Collins in substance alleged: that, for several years prior to May 30, 1958, he had been employed as assistant manager of Radio Station WAGA-TV in Atlanta, Georgia, by the defendant, Storer Broadcasting Company, an Ohio corporation, with its principal office and place of business in Atlanta, Fulton County, and that, on May 30, 1958, he resigned his position as an executive employee, and on July 1, 1958, he accepted the position of station manager of Radio Station WGST in Atlanta, where he is now employed. In December, 1953, Storer Broadcasting Company entered into an agreement with National Bank of Detroit, Michigan, as trustee and five named individuals as a "committee", which established a trust for the benefit of the employees of the company and its wholly owned participating subsidiaries. As material here, the agreement in substance was a profit-sharing plan for the employees of the company and other wholly owned subsidiary companies engaged in radio and television broadcasting.

A participating employee was to be any person "who has satisfied and continues to satisfy, as of the time for application of such definition, the requirements of this indenture as to eligibility to participate in prospective contributions or contributions then due to this trust." The trust fund, to be held and administered by the trustee, consisted of contributions by the company and its

subsidiaries from their income and profits. No contributions to the fund were to be made by the employees. Section 16 provided: "Neither the participant in whose name the trustee holds any trust funds or account, nor any beneficiary or other person claiming under any such participant, shall have any vested or property rights in any trust or account, or in any money deposited in the trust or any investment thereof or any income therefrom, unless and until the rights of such participant or beneficiary shall become non-forfeitable under the provisions of section 17 of this indenture." Under section 17, providing for vesting of nonforfeitable rights, it was provided: "Notwithstanding the foregoing, the vested and nonforfeitable rights of any participant who is also an executive employee shall be subject to divesture and forfeiture as provided in section 32." Section 32, as subsequently changed on January 1, 1958, provided: "Any participant who is also an executive employee shall be required to execute an agreement with the company and its respective subsidiary, at or before the time such executive employee ceases to be employed by the company or any of its subsidiaries, as a condition precedent to the right of such executive employee to receive any payments under sections 30 and 31, which agreement will provide as follows: (1) That such executive employee will not, for a period of three (3) years after such executive ceases to be an employee of the company or its subsidiaries, engage in the radio or television broadcasting business, either directly or indirectly, or accept employment with any radio or television station, within the primary coverage area or any radio or television station or both then owned and operated by the company or any of its subsidiaries, or in which the company or any of its subsidiaries has an interest, and (2) That in the event of breach or violation of such agreement, the right of such executive employee to any further payments hereunder, shall forthwith be divested and forfeited and, further, such executive employee shall be required to return and forthwith pay over to the trustee hereunder, the total of all payments theretofore received by such executive employee as the measure of and as liquidated damages for the breach and violation of such agreement; provided, however, that there shall be in any event

a forfeiture of only so much of any such account which is attributable to the contribution of an employer company which still has at the time of any such forfeiture an employer account hereunder, and to which account or accounts the forfeiture shall be allocated. (b) The committee may waive the requirement as to execution of such agreement, or waive the penalties for breach or violation of such agreement, as the case may be, if the committee shall determine, in a consistent and nondiscriminatory manner, either: (1) That there is only minimal economic damage risked or experienced by the company and its subsidiaries if such waiver is afforded; or (2) That such executive employee ceased to be an employee of the company or any of its subsidiaries due to termination of his employment for any reason other than: (i) commission of any act of fraud or dishonesty or of any other act involving moral turpitude; (ii) willful damage or injury to the property, business, or good will of the company or any of its subsidiaries, (iii) failure to observe after due warning, any rules, regulations, or policies of the company or any of its subsidiaries; (iv) failure to properly perform, after due warning, duties or instructions specifically assigned or given to such executive employee; or (v) voluntary resignation by such executive employee. The decision and determination of the committee or all the above facts shall be final and conclusive."

The general management and administration of the plan was first placed in the hands of a committee of five, later changed to seven, to be known as the profit sharing plan committee, who were to be appointed by the board of directors of the company. Among the powers given to them, were: The power to make determinations of facts, which would be final and conclusive as to: "Who are participating employees and the date as of which an employee becomes or ceased to be a participating employee. The extent to which and the time the active account of a participant becomes nonforfeitable under the provisions of section 17 of this indenture. The extent to which and the time where the active account of a participant becomes forfeited under the provisions of section 17 of this indenture." Section 60 provided: "Neither the establishment of the plan nor the execution of this indenture, nor any future amendment, alteration or

modification of the plan or of this indenture, nor the creation of any trust fund or account, nor the payment of any benefits, nor the making of contributions to the trust fund by the company and its subsidiaries shall be construed as giving to any participant or any other person whomsoever, any legal or equitable right or claim against the company or its subsidiaries; and only participants whose interest in the trust fund has become nonforfeitable, as provided in section 17 of this indenture, or their beneficiaries, shall have any legally enforceable rights whatsoever under the terms of this indenture, and the rights of any such participants may be enforced only against the trustee and the committee (but not against the company or its subsidiaries) to the extent specifically provided for in this indenture."

Subsequently, Miami First National Bank of Miami, Fla., was substituted by amendment to the agreement as successor trustee.

It was alleged that on March 14, 1956, the plaintiff and the company entered into the following agreement: "1. That executive employee is employed by the company and is a participant in the profit sharing plan for employees of Storer Broadcasting Company. 2. That the term 'Executive Employee' is defined by the indenture of trust setting up said profit sharing plan as: 'any employee employed in a bona fide executive, administrative, or professional capacity or in the capacity of an outside salesman as such terms are defined and delimited by regulation pursuant to section 13 (a) (1) of the Fair Labor Standards Act of 1938, as amended, 'and that executive employee is employed by the company in one or more of the before-mentioned capacities.' 2. That said indenture of trust requires that as a condition precedent to the right of an executive employee to receive any payment under the plan, said executive employee must agree not to compete with radio or television stations owned and operated by Storer Broadcasting Company or its subsidiaries within the primary coverage area of such stations for a period of five years. 4. That in consideration of any payments which may be made to executive employee pursuant to said indenture of trust, executive employee agrees that he (she) will not, for a period of five (5) years after he (she) ceases to be an employee of the company, or any of its subsidiaries, engage in the radio or tele-

vision broadcasting business either directly or indirectly, or accept employment with any radio or television broadcasting station with the primary coverage area of radio or television station, or both, then owned and operated by the company or any of its subsidiaries, or in which the company, or any of its subsidiaries has an interest. 5. That in the event of breach of this agreement, the right of said executive employee to any further payments hereunder shall forthwith · be divested and forfeited and said executive employee shall forthwith return and pay over to the trustee under said profit sharing plan, the total of all payments theretofore received by him (her) as the measure of and as liquidated damages for the breach and violation of said agreement." It was further alleged that, after leaving his employment, he requested and demanded payment of his share under the profit sharing plan. When he was advised that he had forfeited his right as a participant or beneficiary of the plan under section 32, as amended, of the agreed plan, after several conferences between his attorney and a member or members of the committee, in which plaintiff's counsel asserted that the contract he signed with the company on March 14, 1956, as to his engaging in the radio television broadcasting business for 5 years after he ceased to be an employee of the company, was illegal and void, he filed a request that the committee waive the forfeiture, as provided in section 32. In this request the plaintiff did so, reserving the right to question the validity of the contract of March 14, 1956. The petition sets forth the action of the committee on the plaintiff's "Request for waiver of penalties for breach of agreement not to compete." The committee found and determined, "that a primary purpose of section 32 of the indenture of trust is to preclude the profit sharing plan from constituting an incentive or inducement for executive employees as defined in the indenture of trust to leave the employ of the company or its stations and to accept competitive positions. It further finds and determines that a grant of the requested waiver in the instant case, where an executive employee who has held confidential executive positions with the company and its Atlanta stations for a period of upwards of nine years and has resigned to accept the position of general manager with

a competitive station in the same market and area, would require the committee to apply section 32 in a consistent and nondiscriminatory manner by granting all other similar requests, thus making the instant determination a precedent which would defeat the primary purpose of section 32 set forth above, causing the company and its stations in all cities to risk or experience the substantial economic damage, loss or injury that would result if its trained and experienced executive and management employees were to transfer to competitive stations," and declared the amount in his account under the profit sharing plan to be forfeited and his interest therein voided and terminated.

The seven members of the committee, all residents of Florida, are named as defendants. It is alleged that the determination of the committee, refusing payment to the plaintiff and forfeiting his interest in the fund, was wilfully and wantonly done; that their action was illegal, arbitrary, capricious, fraudulent, a breach of fiduciary trust, and done in bad faith; that, as a result of their action, the members of the committee, who were also employees of the company, obtained a financial gain or enrichment as a result of the forfeiture of the sum of approximately $20,430, then credited to the account of the plaintiff under the profit sharing plan. The petition prayed for a judgment in personam against the members of the committee, jointly and severally, for the above-named sum. It was alleged that the defendant company aided and abetted the committee in making the determination as to forfeiture, and judgment was prayed against the company for a like amount. It was alleged that the defendant committee members owned stock in the defendant company and would be entitled to salaries and bonuses paid by the defendant through its subsidiary in Florida, and he, the plaintiff, was entitled to an equitable attachment against the sums that the company might owe the committee members. It was prayed that the contract of March 14, 1956, between the plaintiff and the company, be declared illegal and void; that a receiver be appointed to take charge of the assets of the nonresident defendants located in this State; that the defendant company be restrained in making payments of dividends, salaries, or bonuses to the nonresident defendants; and for a money

judgment against the company for $50,000 as attorney's fees and for expenses on account of the bad faith and the stubborn litigations of the defendant company and the members of the committee. It was prayed that the nonresident defendants be served by publication.

The defendants filed separate general demurrers. The demurrers of the nonresident defendants were filed subject to their pleas to the jurisdiction.

■ Whether or not the petition stated a cause for any relief, legal or equitable, against any one or more of the defendants is dependent upon one determination: Does the petition allege a cause of action against the committee members by reason of their action in forfeiting the plaintiff's interest as a participant in the profit sharing plan under section 32 of the plan, and refusing his request for a waiver as provided in this section? The trustee under the plan is not a party to the case. It is not an effort to collect any sum of money held in trust for the benefit of participating employees. No attack is made on the validity of the plan or upon section 32 of the profit-sharing agreement. What interest, if any, the plaintiff has in the profit-sharing fund in the hands of the trustee or what liability, if any, the trustee has to the plaintiff is not involved in this case. Liability of the defendant members committee is based upon the charge that, through their arbitrary, fraudulent, and capricious action, their determination of forfeiture was illegal, thereby damaging the plaintiff in the amount of the value of his interest as a participating employee in the fund held by the trustee. Whether the action be construed as one sounding in tort or for an accounting by the committee defendants as trustees maleficio, is not material, because the central question is whether their action under the allegations of the petition was illegal or wrongful. Under the profit sharing plan, the defendant committee had the power to make a determination as to who were participating employees and the extent to which and the time when the active account of a participant becomes forfeited. Under section 32 as amended, the committee had authority to waive the penalty of forfeiture, brought about by reason of the plaintiff accepting employment with another radio or television station, upon cer-

tain conditions. The allegations in the petition disclose that the defendant committee members acted under and pursuant to the powers given to them in the profit sharing plan agreement. The gist of the plaintiff's complaint is that the committee acted contrary to his contentions, and that, before making the determination of forfeiture, they should have brought an action in a court to determine the issues and contentions raised by the plaintiff.

The plaintiff seeks to charge the defendant committee members with a breach of duties as trustees owed by them to him. Even if it be conceded that the committee members were trustees in administering the profit-sharng indenture, section 45 of the plan provides: "The committee and each member thereof shall be fully protected in all decisions, directions and other actions taken by the committee or any member thereof in good faith pursuant to the provisions of this indenture and no member of the committee shall incur any liability for anything done or omitted by him in connection with the plan or this indenture, excepting only liability for his own wilful misconduct."

A creator of a trust has the right to make a provision in the instrument creating the trust for the exemption of the trustee from personal liability. Anderson v. Bean, 272 Mass. 432 (172 NE 647, 72 ALR 959); Restatement, Trusts 2d, 516, § 222 (1). The term "wilful default" within the meaning of a provision in the instrument creating a trust making each trustee liable only for his own wilful default has been held to mean "more than involuntary, inadvertent, negligent, mistaken, careless or accidental default. It means an intentional designing failure to do or not to do something required—an affirmative wrong." Thompson v. Hays, 11 F2d 244; New England Trust Co. v. Paine, 317 Mass. 542 (59 NE2d 263, 158 ALR 262). See North Adams National Bank v. Curtiss, 278 Mass. 471 (180 NE 217, 83 ALR 607, 620). The general allegations in the petition that the committee members' determination that the plaintiff had forfeited his right as a participating member-employee in the profit sharing plan "was based upon a reckless and wantonly wrongful conclusion," was made "wilfully and wantonly and with a reckless disregard of his rights," and such action was "illegal,

arbitrary, capricious, fraudulent, a breach of fiduciary trust, done in bad faith and was not final and conclusive between the parties," are not supported by any specific allegations of facts. On the contrary, the petition discloses that the committee members acted under and pursuant to the powers granted to them in the profit sharing plan indenture. We, therefore, conclude that the petition fails to set forth a cause of action for any relief against the nonresident defendants, members of the committee, and it was not error to sustain their general demurrers.

■ We next consider the general demurrer of the defendant, Storer Broadcasting Company. (a) Having held that the petition sets forth no cause of action against the defendant committee members, and since the only allegations connecting the company with the action of the committee in forfeiting the plaintiff's alleged share in the fund is that the company aided and abetted them in their action, it follows that the plaintiff asserts no right to recover a money judgment against the company.

(b) Among·the several prayers of the plaintiff, was that the contract of March 14, 1956, wherein the plaintiff agreed "That in consideration of any payments which may be made to executive employee pursuant to said indenture of trust, executive employee agrees that he (she) will not, for a period of five (5) years after he (she) ceases to be an employee of the company, or any of its subsidiaries, engage in the radio or television broadcasting business either directly or indirectly, or accept employment with any radio or television station with the primary coverage area of any radio or television station, or both, then owned and operated by the company or any of its subsidiaries, or in which the company, or any of its subsidiaries has an interest," be declared void and unenforceable under *Code* § 20-504, which provides: "A contract which is against the policy of the law cannot be enforced; such are . . . contracts in general restraint of trade," and to have the contract delivered up and canceled under the provisions of *Code* § 37-1410 (Quia timet—Removing Cloud on Title). In our opinion the plaintiff was not entitled to such relief. The petition discloses that this contract was entered into solely as a condition precedent to his becom-

ing a participating employee member of the profit sharing plan, and that the employer has neither taken nor threatened to take any action against the plaintiff by reason of the contract. *Code* § 37-1410 does not have any application here. That section provides for removing a cloud on title as to property. The contract sought to be canceled is not a recordable instrument and does not affect title to property. A court of equity will not decree the cancellation of a written instrument as a matter of course in the absence of a statutory provision therefor. *Witt v. Sims,* 140 Ga. 48 (4) (78 SE 467).

■ As to the remaining defendants, resident and nonresident, no legal relief was prayed against them. The prayers for injunctive relief are based solely upon the right of the plaintiff to recover a money judgment against the defendant company and the defendant committee members. No cause of action being alleged as against them, it follows that the plaintiff is not entitled to any relief by way of injunction against the defendant company or committee members.

It was not error to sustain the general demurrers of the several demurring defendants and to dismiss the petition as to them.

*Judgment affirmed. All the Justices concur, except Head, P.J., who dissents.*