A98A1597. HOPKINS v. GARNER & GLOVER COMPANY.
(504 SE2d 78)

ELDRIDGE, Judge.

James Hopkins, defendant-appellant, was employed as an insurance agent by Garner & Glover Company, plaintiff-appellee, from September 1, 1982, until January 1995. The employment agreement provided that it was for an initial four years; however, the attached compensation schedule expressly stated that it would govern the initial four years and any further period of employment unless modified in writing by the parties.

From sometime after March 1992, the defendant was unable to produce sufficient commissions, and plaintiff provided a regular draw, which was paid whether or not there were earned commis-

sions. Plaintiff paid the defendant $500 a month in addition to the commission draw.

In March 1992, defendant executed a promissory note to the plaintiff in the amount of $34,603.62, which was due December 31, 1992. At a later date, the defendant and the plaintiff's president executed a document denominated "memorandum of agreement" that stated in part "[n]o payment will be required on the current note until 1-1-93 although interest will continue to accrue. As of 1-1-93, the current note will be exchanged for a note of no more than five (5) years with an interest rate of no less than the current accrued deficit." No new note was ever exchanged for the original note.

In January 1995, defendant left the plaintiff's employment and went to work for a rival insurance agency. The defendant discussed with the prospective employer which accounts of the plaintiff's the defendant could bring with him, and upon moving, defendant did bring a number of accounts. Plaintiff sued on the note. The defendant answered, denying liability on the note, and asserted a counterclaim based upon a set-off from commissions on renewal premiums allegedly due to him from the plaintiff.

The parties entered into an employment agreement during the defendant's employment for a period of four years that began on September 1, 1982. Compensation was provided that the defendant receive 50 percent of all new contracts written by the defendant; that defendant receive 25 percent of all renewals of insurance written by the defendant; and that "when [defendant] validates" he "will own fifty percent (50%) of the renewals retroactive to the date of employment." After the initial four years of employment under the compensation schedule, the compensation schedule stated that defendant's compensation was to be based upon commissions earned under the schedule unless replaced by a new schedule mutually agreed upon by the parties. Defendant worked exclusively for the plaintiff until January 9, 1995.

Defendant testified that he validated on January 1, 1991, "meaning whatever his commission split happened to be is what constituted his compensation." Validation occurs when commissions exceed any guarantee of what an agent is paid or when the agent's commission split with plaintiff constitutes his compensation. Defendant also testified that, at all times during his employment, he engaged in the insurance business exclusively and solely as an agent for the plaintiff and that at no time did he engage in any other business or professional activity. Plaintiff's principal, William A. Dupree, denied that the defendant ever validated, because after the March 1992 memorandum agreement, the defendant received $500 a month in addition to his draw. Each month the defendant received a set amount of compensation from the plaintiff.

The parties filed cross-motions for summary judgment both on the note and on the counterclaim. On January 24, 1997, the trial court granted plaintiff's motion for summary judgment on the note and denied defendant's motion on such issue. However, on the counterclaim, the trial court denied both parties' motions. In such order, the trial court stated that "the court can best determine that validation never took place in the case at hand. By defendant's admission, he received a set amount each month as compensation. It would appear that validation never occurred during the time that Defendant was employed by Plaintiff. . . . While the evidence shows validation was not obtained, the opportunity for repayment still exists to make the employer whole again. . . . Summary Judgment GRANTED to Plaintiff on the Promissory Note in the amount of $42,351 as of March 20, 1996, plus daily interest of $11.38 from March 20, 1996 through the date of judgment, plus 10% of all principal and accrued interest as attorney's fees. Summary judgment on the Defendant's counterclaim DENIED."

In an earlier appeal, this Court, on November 20, 1997, affirmed the trial court in Case No. A97A1391, an unpublished opinion. This Court stated that the trial court "found that 'validation never took place'"; since the defendant did not raise this "finding" as error, it could not address such issue.

After the remittitur, plaintiff filed a renewed motion for summary judgment. The trial court entered its order on February 23, 1998, which sought to clarify the order of January 24, 1997, and granted the second summary judgment motion.

The defendant's enumeration is that the trial court erred in granting summary judgment on February 23, 1998, as to the counterclaim. We agree.

1. The record shows that there is a material issue of fact as to the validation; the defendant testified positively that he had validated on January 1, 1991, and Mr. Dupree denied that the defendant had done so. In the January 24, 1997 order, in explaining why the trial court denied the defendant's summary judgment motion as to the counterclaim, the trial court stated "the Court can best determine that validation never took place in the case at hand. By defendant's own admission, he received a set amount each month as compensation. It would appear that validation never occurred during the time that Defendant was employed by Plaintiff. . . . While the evidence shows validation was not obtained . . . [, the plaintiff was entitled to judgment]."

Nowhere in the order of January 24, 1997, did the trial court state that it granted the plaintiff's motion for summary judgment as to the defendant's counterclaim or granted plaintiff's motion as to all issues, although the order stated that the motion was granted as to

the note. In fact, the alleged admission by the defendant that "he received a set amount each month as compensation" is subject on motion for summary judgment to the favorable inference that the plaintiff spread defendant's earned commissions evenly throughout the year as a draw against prior earnings, instead of a salary, which would support, and not negate, "validation" on January 1, 1992, and the $500 per month did not commence until some time after March 1992, three months after the alleged validation. There is no evidence that it was the intent of the parties that the defendant could fall out of validation since achieved or that he had to continuously maintain such status for any period of time to validate. The trial court could not, under OCGA § 9-11-56, make findings as to such disputed facts.

In its opinion, this Court stated that "the trial court did not expressly rule on the enforceability of the [employment] contract but concluded that Hopkins never validated" and that this Court could not address an issue not raised that the trial court "found that 'validation never took place.' " Since such "finding" by the trial court went expressly to the denial of the defendant's motion for summary judgment as to the counterclaim, and not to the grant of summary judgment for the plaintiff on such issue, then defendant was not bound by such "finding" as the law of the case. Obviously, the plaintiff realized this, because plaintiff filed a renewed motion for summary judgment that stated: "[t]he Plaintiff believes that this Court's January 24, 1997 Order adjudicated the Defendant's Counterclaim in the Plaintiff's favor." Plaintiff sought to have the trial court retroactively grant its motion for summary judgment over a year later as to the counterclaim. The trial court saw plaintiff's motion as seeking "clarification of January 24, 1997 Order of This Court in Parties' Cross Motions for Summary Judgment, *specifically pertaining to the Denial of Defendant's Motion for Partial Summary Judgment.*" (Emphasis supplied.) This plainly states that the trial court knew that it had denied such motion. However, in the order of February 23, 1998, the trial court further stated: "This Court found that Mr. Hopkins NEVER VALIDATED and in clarification of Our Original Order, because Mr. Hopkins NEVER VALIDATED, his rights to enforce any existing Employment Contract with Garner and Glover ended the day he went to his new employer." The trial court had second thoughts as to its order entered a year earlier and sought to change it retroactively instead of ruling currently on the validation issue on the renewed motion for summary judgment.

The trial court has the inherent power to modify or amend its final orders or judgment until the end of the term within which it was entered. *Cooley v. All the World*, 247 Ga. 459, 460 (1) (276 SE2d 615) (1981); *Bank of Cumming v. Moseley*, 243 Ga. 858 (257 SE2d 278) (1979); *Pekor v. Clark*, 236 Ga. 457, 458 (1) (224 SE2d 30) (1976);

*Bd. of Ed. v. Shirley*, 227 Ga. 565, 566 (181 SE2d 826) (1971); *Hinson v. Hinson*, 218 Ga. 447 (128 SE2d 487) (1962). When the term expired without a petition to amend being filed by either party, the trial court lost its inherent power to amend as to any matter of substance except as provided by statute. See *Cobb County v. Buchanan*, 261 Ga. 857, 858 (413 SE2d 198) (1992); *City of Cornelia v. Gunter*, 227 Ga. 464 (181 SE2d 489) (1971); *Bufford v. Bufford*, 224 Ga. 850, 853 (2) (165 SE2d 128) (1968); *Hunter v. Big Canoe Corp.*, 162 Ga. App. 629, 630 (291 SE2d 726) (1982); *C & S Nat. Bank v. Burden*, 145 Ga. App. 402, 403 (1) (244 SE2d 244) (1978). The plaintiff did not file its motion for clarification until February 12, 1998, long after the term had expired and subsequent to the first notice of appeal. See *Heller v. Bd. of Commrs.*, 238 Ga. 501 (233 SE2d 761) (1977). It would be unjust, after an appeal has been decided on the earlier grant of summary judgment, to allow either party to have the trial court enter a subsequent order of clarification of substantive matters that makes the earlier order a final adjudication on the merits on other issues. The trial court lacked such power to change the January 24, 1997 order. While denominated as clarification of the January 24, 1997 order, the order of February 23, 1998 had the effect of changing substantive rights retroactively to the grant of summary judgment on January 24, 1997, to make that judgment apply to the counterclaim as a final judgment. Such February 23, 1998 order for that purpose was void and a nullity. See *Cobb County v. Buchanan*, supra; *Robinson v. Kemp Motor Sales*, 185 Ga. App. 492, 493 (364 SE2d 623) (1988).

2. However, the order of February 23, 1998, must be considered as the grant of summary judgment to the plaintiff on the counterclaim based upon the then-existing record. In that regard:

(a) The affidavits of Hopkins and Dupree are in direct conflict creating a material issue of fact as to the validation of the compensation schedule. This conflict of fact required the denial of the motion, as the trial judge is not permitted to resolve such conflict. *Pritchard v. Neal*, 139 Ga. App. 512, 513 (229 SE2d 18) (1976); *W. J. Bremer, Inc. v. United Bonding Ins. Co.*, 122 Ga. App. 183, 184 (176 SE2d 633) (1970). When a material issue of fact exists, the jury must resolve such conflict. *Watkins v. Nationwide Mut. Fire Ins. Co.*, 113 Ga. App. 801, 802-803 (149 SE2d 749) (1966); *Holland v. Sanfax Corp.*, 106 Ga. App. 1, 5 (1) (126 SE2d 442) (1962).

(b) While the written employment agreement specified the time period of September 1982, until September 1986, it provided for the compensation to continue into the future: "After the initial four (4) year period and during the term of the employment agreement dated the 1st day of September, 1982, James P. Hopkins' compensation shall be determined exclusively based upon commissions earned pur-

suant to this schedule and/or any replacement schedule mutually agreed upon in writing by the parties." The compensation schedule, agreed upon by the parties, expressly contemplated future employment by the language of the agreement, even if the employment contract expired. The defendant continued to work for about eight years, until January 5, 1995, under such compensation schedule as the employment agreement. Whether the eight year compensation agreement was ever orally modified and whether it included the validation is in factual dispute.

Further, whether the written contract was automatically renewed under the theory of "tacit relocation" is a fact question based upon the intent of the parties, which is in dispute. See *Standard Oil Co. v. Gilbert & Co.*, 84 Ga. 714, 717-720 (11 SE 491) (1890); *Empire Box v. Moore*, 87 Ga. App. 57, 66-68 (2) (73 SE2d 63) (1952).

3. If the evidence shows that the 1982 written contract was renewed orally or modified by oral novation, despite the requirement that any modification or extension be in writing, then the other terms of such contract must be given effect beyond the compensation schedule.

Under such written contract, the defendant was prohibited from "other employment and shall engage in no other business or professional activity during the term of this agreement, which shall substantially interfere with his employment with Employer." The compensation schedule provided: "James P. Hopkins acknowledges his commitment to engage in the insurance business exclusively as agent of Garner & Glover Company as required herein." There exists a factual question as to the proper construction of such provisions.

There is a factual issue under the contract language as to whether the defendant breached such agreement under the facts of this case through a plain language construction that literally means "simultaneous employment," or as to whether the terms have a broader scope so as to encompass the conduct in this case. It is undisputed that, while employed by the plaintiff, defendant sought out a rival insurance agency, discussed employment with such insurance agency, discussed taking customers of the plaintiff, and left the plaintiff in order to work for another agency less than five months after the anniversary of the written contract; but does that conduct come within the prohibited conduct?

There is a question of fact to be determined if the contract was breached as to the period of any renewal of the written contract, i.e., 12 months from the anniversary or employment at will. In order to determine if the defendant breached the contract by taking employment within the 12 months, then the contract must be construed to give employment for a definite period, which would conflict with the general policy of Georgia law that indefinite contracts of employment

are at will. OCGA § 34-7-1; *Jellico v. Effingham County*, 221 Ga. App. 252 (471 SE2d 36) (1996); *Jackson v. Nationwide Credit*, 206 Ga. App. 810, 811 (1) (426 SE2d 630) (1992).

If the defendant was found to have totally or partially breached the agreement, then the agreement does not specify a remedy for breach, and a jury question is created as to the consequential damages to the plaintiff and defendant as to past and future performance. OCGA §§ 13-6-2; 13-6-4.

The trial court ruled that the defendant breached the contract, which is a factual question for the jury. The trial court construed the written contract as providing for a penalty or total forfeiture of all renewal commissions, which conflicts with the general policy of Georgia law as to penalties or forfeiture when a contract has no such written provision. *AFLAC, Inc. v. Williams*, 264 Ga. 351, 354 (2) (444 SE2d 314) (1994); *Waldrup v. Bettis*, 223 Ga. 715, 720 (3) (157 SE2d 870) (1967); *Budget-Luxury Inn of Dayton, Ltd. v. Kamash Enterprises*, 194 Ga. App. 375, 376 (390 SE2d 607) (1990); *Nat. Consultants v. Burt*, 186 Ga. App. 27, 32-33 (2) (366 SE2d 344) (1988). "A liquidated damages provision is or is not enforceable based upon the intent that was manifested at the time that the provision was originally proposed and agreed to, and to determine the intent, we first look to the contract language." (Citations and punctuation omitted.) *Roswell Properties v. Salle*, 208 Ga. App. 202, 205 (3) (c) (430 SE2d 404) (1993). There was no contract language which addressed such issues.

The written contract could have expressly provided for loss of rights and privileges by forfeiture for engaging in competitive employment, but it did not do so. *Collins v. Storer Broadcasting Co.*, 217 Ga. 41, 50-51 (2) (b) (120 SE2d 764) (1961); *Sheppard v. Columbus Pkg. Co.*, 146 Ga. App. 202 (245 SE2d 887) (1978); *Brown Stove Works v. Kimsey*, 119 Ga. App. 453-456 (2) (167 SE2d 693) (1969). In fact, a written insurance agent employment contract could provide for the forfeiture of future commissions on renewal premiums for working for a competitor; however, the compensation schedule and the written employment agreement did not do so. See *Nat. Consultants v. Burt*, supra at 31-32. Georgia law does not favor forfeiture. *Waldrup v. Bettis*, supra at 720; *Nat. Consultants v. Burt*, supra at 32-33.

It is a fact question under the ambiguous language of the compensation schedule whether the additional 25 percent of renewal commissions after validation was given as additional past compensation or as inducement to remain faithfully employed; such is a question of the intent of the parties. Therefore, if the defendant had a vested interest in the first 25 percent of the renewals as past compensation, and if the second 25 percent of the renewals after validation

were for future compensation for continued faithful employment, then the loss of the future compensation would not be a prohibited forfeiture. Likewise, the jury could find that the second 25 percent of the commissions on renewals were additional past compensation, if they find that there had been validation. If the defendant did not validate the contract, then he had a vested right in commissions on renewal premiums as past earned compensation. See *Nat. Consultants v. Burt*, supra.

4. Where facts as to the intent of the parties are in dispute, the construction of the ambiguous terms of the written contract is for the jury if, after application of the rules of construction by the trial court, the contract remains ambiguous. See OCGA § 13-2-1; *Interstate Fire Ins. Co. v. Nat. Indem. Co.*, 157 Ga. App. 516 (277 SE2d 802) (1981); *Bress v. Keep-Safe Indus.*, 155 Ga. App. 544, 545-546 (1) (271 SE2d 867) (1980); *Trippe v. Crescent Farms*, 58 Ga. App. 1, 4 (197 SE 330) (1938). The trial court has not construed these contract provisions, because the trial court decided the case on other grounds, i.e., lack of validation and breach of contract.

*Judgment reversed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED JULY 2, 1998 —

*Brinson, Askew, Berry, Seigler, Richardson & Davis, Robert L. Berry, Jr., Mark M. J. Webb*, for appellant.
*Hine & Niedrach, John E. Niedrach*, for appellee.