## A09A2105, A09A2312, A10A1040. CITIZENS FOR ETHICS IN GOVERNMENT, LLC et al. v. THE ATLANTA DEVELOPMENT AUTHORITY et al. (three cases).

(694 SE2d 680)

ADAMS, Judge.

Citizens for Ethics in Government, LLC ("CEG") and John F. Woodham ("Woodham") (collectively referred to herein as "Intervenors")[1] filed these appeals in connection with two bond validation proceedings filed under the Revenue Bond Law, OCGA § 36-82-60 et seq., involving the Atlanta Development Authority (the "Authority"), 13th Street Holdings, LLC ("13th Street") and Mezzo Development, LLC ("Mezzo") (13th Street and Mezzo collectively referred to herein as the "Developers").

On October 29, 2008, the district attorney, on behalf of the State of Georgia, filed a Petition and Complaint for Bond Validation pursuant to OCGA § 36-82-75 in each of the two proceedings. The first petition sought to confirm and validate the issuance of taxable lease-purchase bonds by the Authority in an amount of up to $70 million for a project developed by 13th Street, and the second petition sought the same for bonds in an amount up to $60 million for a project developed by Mezzo. Each of these projects involved multi-family apartment developments. The Intervenors sought to intervene in each of these proceedings under OCGA § 36-82-77 (a) by appearing at the bond validation hearings on November 17, 2008, and filing complaints in open court. The trial court continued the validation hearings to allow for discovery and to allow the Authority and the Developers to respond to the Intervenors' complaints.

### December 15, 2008 Hearing

The trial court scheduled a status conference on December 15, 2008, and the Intervenors, who had previously filed notices to produce, filed subpoenas in anticipation of that hearing. The Authority and the Developers filed motions to quash the notices and subpoenas on December 12, 2008, and the trial court heard argument on those motions at the December 15 hearing.

During argument, Cary Ichter, counsel for the Developers, represented that Woodham had phoned Scott Leventhal, president of Tivoli Properties, Inc., the manager of both Developers, on November 19, 2008, two days after the Intervenors filed their complaints.

---

[1] Woodham, who is a member of the State Bar, represents himself pro se in this action and also represents CEG. Woodham is the controlling member/manager of CEG, which the Developers assert he formed two days after the State filed its bond validation petitions.

Patricia Roy, outside counsel for the Developers, was also a party to the phone call. Ichter represented that in that conversation, Woodham said he had no issue with the Developers but was prepared to litigate with the Authority all the way to the Supreme Court. According to Ichter, Woodham suggested that the Developers could avoid the costs of this extended litigation if they paid the Intervenors $1.3 million, or one percent of $130 million, the amount of the combined bond issuance. These allegations were also included in the motions to quash filed by the Developers and the Authority. Woodham refused to discuss these allegations at the hearing, citing privilege. But Woodham noted that what Ichter "has described is not the nature of what I intended to do" and had Ichter returned his phone calls, Ichter "would know that any discussions that we may have had would have been dramatically different than he has described."

The trial court granted the motions to quash and sua sponte ordered a continuance of the hearing until January 30, 2009. The trial judge indicated that at that time, (1) he would determine whether the bond validation issue presented strictly a question of law or whether it involved factual issues; (2) if he determined that the matter presented a legal question, he would rule upon the bond validation; (3) if factual issues were presented, he would determine if discovery was necessary; (4) he would consider whether John Woodham's actions warranted sanctions, including attorney fees or a referral to the State Bar; and (5) he would "hear any motions I deem appropriate with respect to this case." The judge cautioned Woodham to prepare for those issues. This hearing was subsequently re-scheduled for February 27, 2009.

## First Motion to Recuse

Meanwhile, on December 19, the Intervenors filed a motion to recuse the trial judge. The motion asserted, inter alia, that the trial judge should be recused because he had allowed Ichter "to make a series of grossly inflammatory remarks in open court" over the Intervenors' objection at the December 15 hearing. At the trial judge's request, the clerk of court randomly assigned the motion to another judge for consideration. After reviewing the motion with supporting affidavit and briefs, "the entirety of the clerk's file" and the transcript of the December 15 hearing, the assigned judge issued an order on January 9, 2009, denying the motion and finding that the Intervenors had failed to establish any ground for recusal. The Intervenors apparently did not seek reconsideration or permission to

appeal that order.[2]

## Anti-SLAPP Motions

Additionally, on December 20, 2008, Woodham sent Ichter a letter invoking the Anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") statute, OCGA § 9-11-11.1. The letter requested verification of the motions to quash under that statute, as follows:

> To the extent the foulmouthed invective set forth in your Motions to Quash filed December 15, 2008 . . . purports to set forth or assert a claim against Intervenor Parties or the undersigned counsel, Intervenor Parties and the undersigned hereby bring to your attention that the verifications required under OCGA § 9-11-11.1 (b) are missing.

On February 25, over two months after sending this letter and two days before the scheduled February 27 hearing, the Intervenors filed Motions to Strike and to Dismiss with Prejudice under OCGA § 9-11-11.1 (d) in each case. Each motion stated in underlined type that "[t]he filing of this Motion automatically stays, by operation of law, all pending discovery and hearings in this proceeding." The motions asserted that the Developers and their counsel made "certain slanderous allegations and claims against Intervenors" in their earlier motions to quash. The Intervenors contended that the motions to quash should have been verified under OCGA § 9-11-11.1 (b), and the Developers failed to do so.

The next day, the Developers' attorneys e-mailed the trial court to announce that they were ready to proceed with the February 27 hearing and to request the court to confirm that the parties were required to appear at that hearing, notwithstanding the Intervenors' "11th Hour filings." The trial court replied by e-mail to all parties, that they were "required to appear at the bond validation hearing scheduled for tomorrow, 2/27/2009, at 9 a.m. . . . ." Woodham responded that the February 27 hearing was stayed under OCGA § 9-11-11.1, and the "Intervenors will not be attending any hearings which have very clearly been stayed by operation of law."

---

[2] We note that the parties chose not to provide this Court with the full record on appeal, and instead each side designated or requested this Court to order that certain portions of the file below be included in the record on appeal. Accordingly, the filings did not come to us in chronological order and we are left with something of a piecemeal view of the proceedings below.

## February 27, 2009 Hearing

The hearing took place as scheduled the next day with the Authority and the Developers, and their respective counsel in attendance, but without the Intervenors. The trial court noted at the beginning of the hearing that the Intervenors were not present despite the fact that the hearing was noticed "at least 30 days ago," and again the previous evening. The court also noted that the Intervenors had filed motions based upon the anti-SLAPP proceeding, which they contended stayed the hearing, but the trial court found the motions to be "completely meritless" and denied them from the bench. The trial court found, therefore, that no stay applied, and the hearing should go forward.

The trial court then heard evidence from the Developers in connection with the court's consideration of sanctions against the Intervenors. Leventhal testified about his telephone conversation with Woodham in November 2008, and the Developers presented a recording and transcript of that conversation. Leventhal testified that Woodham made multiple calls to his office asking to speak to an attorney who was not bond counsel, and would not speak to Leventhal without such alternate counsel. Woodham said that he did not wish to speak with Leventhal's bond counsel because bond attorneys did not find him credible. Leventhal contacted attorney Roy at her office and the parties engaged in a three-way conference call, with each party at a separate location.[3]

Leventhal testified that during that conversation, Woodham said that he did not have a problem with the Developers and that he did not fault them for getting into the deals offered by the Authority, but Woodham said he criticized the Authority for offering such deals. He noted that if no one intervened in the validation process, such deals are automatically validated by the courts. But Woodham emphasized several times that he had been involved in a prior bond validation proceeding, which he had taken to the Supreme Court. He did not mind taking any case that far, and he did so "out of the taxpayers' perspective." Woodham said that he was not looking for anything from the Developers, but he was prepared to litigate this matter with the Authority "all the way to the Supreme Court." Nevertheless, Woodham suggested that a possible resolution, to avoid the attorney fees involved in such litigation, would be for the Developers to pay the Intervenors one percent of the bond issuance, which would total

---

[3] Ichter represented that before speaking to Roy and Leventhal, Woodham extracted a promise from Roy that she would not record the conversation. While Roy did not record the phone call, unbeknownst to her, Leventhal did record the call and it was his recording that was introduced into evidence.

$1.3 million. He reiterated, "if you guys want to prevent [litigation to the Supreme Court] from happening, you have a way out, and I just suggested it."

Attorney Ichter also questioned Leventhal about a letter Woodham sent on December 17, 2008, addressing the allegations Ichter raised at the December 15 hearing. Ichter read Woodham's statement from the letter that if either Roy or Ichter had returned Woodham's e-mails or phone messages they would have learned that he was asking for .1 percent, not one percent, of the bond value and that he was intending that such funds be paid in the form of a donation to a homeless shelter. Leventhal testified, however, that Woodham never made any reference to .1 percent of the bond issuance, nor did he ever mention any donation to a homeless shelter. Instead, when Roy and Leventhal specifically asked Woodham to whom the one percent payment should be made, he replied "to the Intervenors."

The trial court found that Leventhal's testimony was credible and the court relied upon this uncontroverted testimony in reaching a decision, while the recording of the phone call "had very little bearing on the court." The trial court found that Woodham had handled the matter "in an unethical manner" because he admitted that the Developers had done nothing wrong, but still solicited a payment to make the litigation "go away." The trial court indicated that it would refer the matter to the State Bar for investigation and ruled that Woodham pay the litigation costs and attorney fees of both the Authority and the Developers. The trial court further dismissed the Intervenors' complaints and granted the bond validations after hearing argument and testimony on the issue.

### March 26, 2009 Order

On March 26, 2009, the trial court entered a written order, prepared by the Developers' attorneys, which denied the Intervenors' Motions to Strike and Dismiss under OCGA § 9-11-11.1, nunc pro tunc as of February 27.

### Second Motion to Recuse

Approximately one month later, on April 21, 2009, the Intervenors filed a second motion to recuse. That motion cited the first recusal motion and additionally asserted that the trial judge had held "one or more unlawful [ex parte] hearings" in violation of the stay provisions of OCGA § 9-11-11.1 (d). In particular, the Intervenors took issue with the judge's statement at the February 27 hearing that "It [becomes] clear to the court [that . . .] this was an unethical

and perhaps illegal way to conduct business. . . . This is what gives lawyers a bad name. [. . .] This is why they have jokes about lawyers outside [of the courtrooms]."[4] The Intervenors asserted that these remarks demonstrated that the trial judge "has stepped into the role of prosecutor and is not able to act as a neutral arbiter in this matter." The Intervenors also objected to a proposed amendment submitted by attorney Roy to a proposed final order submitted earlier. That amendment proposed a ruling that the Intervenors could not file any lawsuit or intervene in any other bond validation proceeding until they presented an affidavit showing that they had paid the attorney fees and litigation costs awarded in this case.

### May 11, 2009 Hearing and May 8, 2009 Order

In response, the trial court ordered the parties to attend a hearing on May 11, 2009. At the hearing, the trial court distributed a "Final Order" entered May 8, 2009, imposing sanctions against the Intervenors, including the dismissal of their complaints and payment of attorney fees and costs. Additionally, the trial court adopted the Developers' proposed amendment requiring payment of attorney fees before the Intervenors could file any new lawsuit. The order also validated both bond issues.

The trial court then heard argument from the parties on Woodham's Second Motion to Recuse. Woodham, who filed emergency motions to disqualify the trial judge, for continuance and for assignment to another judge the morning of the hearing, challenged the trial judge's authority to hear the second motion to recuse. In order not to waive this objection, Woodham refused to argue the merits of his recusal motion. He also objected to the issuance of a Final Order until his Motion to Recuse was decided.

The Developers and the Authority countered that under Uniform Superior Court Rule ("USCR") 25.3, a trial judge is first required to determine if the motion to recuse was timely and substantive before referring it to another judge. They asserted that the Intervenors' motion was both substantively flawed and untimely, and they asked that the motion be denied. They also asked the judge, "out of an abundance of caution," to withdraw its May 8, 2009 final order, which was issued while the Motion to Recuse was pending, and to issue another order after denying the Motion to Recuse.

The trial court denied the motion to recuse as untimely. The trial judge further stated he would "re[-]sign" the May 8 order "out of [an] abundance of caution." The judge also warned Woodham

---

[4] The bracketed changes indicate differences between the quote as recited in the motion and the quote as transcribed at the hearing.

against filing any more "frivolous" motions to recuse, which the court would find contemptuous.

### First Appeal on May 11, 2009

Woodham filed a Notice of Appeal the same day, May 11, 2009, from the trial court's May 8 order and the March 26 order denying the anti-SLAPP motions ("First Appeal").

### May 13, 2009 Order

Subsequently, on May 13, 2009, the trial court signed a written order (1) denying the second motion to recuse as untimely; (2) noting that the court had vacated and withdrawn the May 8 order at the May 11 hearing and withdrawing and vacating that order in writing as of May 11; (3) denying the Intervenors' emergency motions to disqualify, for continuance and for re-assignment; (4) denying the Intervenors' request for a Certificate of Immediate Review; (5) ordering Intervenors not to file any other motions to recuse or any other pleadings concerning prior proceedings; and (6) setting a hearing on the reasonableness of the attorney fees requested by the Developers and the Authority for June 12, 2009.

### May 21, 2009 Orders

On May 21, 2009, the trial court issued an order granting the motion of the Developers and the Authority to dismiss the First Appeal because the March 26 order was not a final, appealable order, and the May 8 order had been withdrawn and vacated prior to the appeal.

That same day, the trial court also signed a Final Order imposing sanctions and validating the bonds.

### Emergency Motion to Court of Appeals

On May 29, 2009, however, the Intervenors filed an emergency motion with this Court pursuant to Court of Appeals Rule 40 (b), to stay further proceedings by the trial court pending their appeal of the May 8 order in the First Appeal. This Court denied the motion on June 12, 2009, finding on the basis of the trial court's assertion in the May 13 order that the trial court had sustained the Intervenors' objection to the May 8 order at the May 11 hearing, that the court had withdrawn and vacated the May 8 order at that time, which ruling was then formalized in the May 13 order. The Intervenors subsequently moved for reconsideration of that decision, arguing

that a transcript of the May 11 hearing would demonstrate that the trial court actually did not withdraw and vacate the May 8 order at the May 11 hearing. This Court denied the motion for reconsideration on June 24, 2009, noting that the trial court's May 13 order was entitled to the presumption of regularity and Intervenors had not demonstrated anything to rebut that presumption.

## *Current Appeals*

The Intervenors filed a second Notice of Appeal on May 26, 2009 from (1) the May 21, 2009 Final Order; (2) the May 21, 2009 Order dismissing the May 11, 2009 Notice of Appeal; and (3) the May 13, 2009 Order, denying, inter alia, the second motion to recuse and withdrawing and vacating the May 8 order. That appeal is docketed as Case No. A09A2105.

The trial court subsequently held an evidentiary hearing on June 30, 2009 to determine the amount of attorney fees. The trial court issued an order on July 6, 2009, awarding the Developers attorney fees and expenses in the amount of $132,705.97 and awarding the Authority attorney fees and expenses in the amount of $303,141.89. The Intervenors appealed that order and in Case No. A09A2312, they argue that their May 26 Notice of Appeal divested the trial court of jurisdiction to rule on the attorney fees issue; that the trial court failed to follow proper procedure at the June 30 hearing; and that the award is not supported by law or evidence.

On September 8, 2009, the Developers and the Authority filed a motion for supersedeas bond, and on November 4, 2009, the trial court granted that motion and ordered the Intervenors to post bond in the amount of $479,432.64, which represents the full amount of attorney fees and costs awarded against them, together with costs and interest. The Intervenors appeal that order in Case No. A10A1040 asserting that their May 26 Notice of Appeal divested the trial court of jurisdiction to enter that order.

## *Case No. A09A2105*

1. The Intervenors contend that the trial court erred in failing to recognize that the February 27 hearing was stayed by operation of law under OCGA § 9-11-11.1 (d)[5] upon the filing of their motions to strike. They further argue that the trial court violated their due process rights in holding the hearing ex parte without notifying the

---

[5] That statute provides in pertinent part that "[a]ll discovery and any pending hearings or motions in the action shall be stayed upon the filing of a motion to dismiss or a motion to strike made pursuant to subsection (b) of this Code section." OCGA § 9-11-11.1 (d).

Intervenors that their motions to strike would be argued at that time.

The General Assembly adopted the anti-SLAPP statute in order "to encourage participation by the citizens of Georgia in matters of public significance through the exercise of their constitutional rights of freedom of speech and the right to petition government for redress of grievances." OCGA § 9-11-11.1 (a). "With the anti-SLAPP statute, the General Assembly sought to prevent the chilling effect that abusive lawsuits would have on the valid exercise of these rights." (Citation omitted.) *Hawks v. Hinely*, 252 Ga. App. 510, 512 (1) (556 SE2d 547) (2001). Thus whenever anyone files a "claim" arising from a protected act as defined in the statute, he must provide a detailed verification of that claim or the claim may be stricken. Id.; OCGA § 9-11-11.1 (b).

The Intervenors' motions to strike asserted that the Developers should have provided OCGA § 9-11-11.1 (b) verifications in connection with the motions to quash argued at the December 15 hearing. Although those motions made allegations about Woodham's statements in the November 19 phone call, they asserted no claims against the Intervenors. Rather, the motions were defensive in nature, merely seeking relief from the obligation to produce documents. Although the allegations in the motions prompted the trial court to set a hearing to consider sanctions against the Intervenors, that action was taken by the trial court sua sponte and not at the Developers' request. The Intervenors have provided no authority, and we have found none, to support their assertion that the Developers had an obligation to provide an OCGA § 9-11-11.1 (b) verification of a defensive motion. Under these circumstances, in the absence of any claim against the Intervenors, the anti-SLAPP statute did not apply. The trial court was therefore entitled to find that the motions to strike were meritless on their face and that no stay barred the scheduled hearing.[6]

And even if the Developers' subsequent presentation of evidence and argument at the February 27 hearing could be construed as a "claim" for sanctions, the anti-SLAPP statute does not apply to a claim based upon abusive litigation. The coverage of the anti-SLAPP statute extends to "abusive litigation that seeks to chill exercise of certain First Amendment rights. . . . It plainly does not extend to protecting those who abuse the judicial process." (Citation and punctuation omitted.) *EarthResources v. Morgan County*, 281 Ga.

---

[6] Moreover, the Intervenors first raised the issue of verification under the anti-SLAPP statute on December 20, 2008, but waited over two months later, until just two days before the scheduled hearing, to file their motions. Accordingly, the trial court also would have been authorized to conclude the motions were interposed merely to delay the proceedings.

396, 400 (4) (638 SE2d 325) (2006) (holding anti-SLAPP statute inapplicable to claim for OCGA § 9-15-14 attorney fees filed after plaintiff's claims found meritless).

That the hearing turned out to be ex parte was attributable solely to Woodham's failure to appear as directed by the trial court. This failure was not induced by any acts or conduct of the Developers or the court. Woodham was on notice that the court intended to proceed in spite of his claimed stay, yet he chose not to appear, not even to make a limited appearance to argue the stay. Thus Woodham was not denied the opportunity to be heard; rather, he chose not to take advantage of the opportunity presented. "[I]nduced error cannot form the basis of a due process claim. [Cit.]" *Wallace v. State*, 294 Ga. App. 159, 161 (2) (669 SE2d 400) (2008).[7]

2. We turn next to the Intervenors' argument that the First Appeal divested the trial court of jurisdiction and thus all subsequent orders, including the order dismissing that appeal, are null and void.[8] In the First Appeal, filed May 11, 2009, the Intervenors appealed, inter alia, from the "Final Order" entered on May 8. They argue that supersedeas attached when they paid the court costs on May 12,[9] divesting the trial court of jurisdiction to enter its May 13 order. Although that order vacated and withdrew the May 8 order "as of May 11, 2009," the Intervenors assert that the trial court actually did not vacate the May 8 order at the May 11 hearing, and thus it lacked the power to enter a written order nunc pro tunc dating back to that date. They assert the May 8 order remained in place and the First Appeal was valid. We must determine, therefore, whether the trial court vacated the May 8 order at the May 11 hearing and thus whether the May 13 order simply memorialized that ruling nunc pro tunc or whether it represented a new ruling by the trial court.[10]

---

[7] We note, moreover, that OCGA § 9-11-11.1 (d) provides that the trial court may hold a hearing, "on noticed motion and for good cause shown . . . notwithstanding [the stay provisions of] this subsection."

[8] As noted above, this argument was the subject of the Intervenors' emergency motion to this Court seeking a stay in June 2009. Under Court of Appeals Rule 40 (b), this Court has the authority to issue an emergency order or to give "such direction to the trial court as may be necessary to preserve jurisdiction of an appeal or to prevent the contested issue from becoming moot." This Court's finding that the Intervenors failed to establish a ground for emergency relief in June 2009 does not prevent us from revisiting the merits of their argument in this appeal. Notably, the appellate record now contains a transcript of the May 11 hearing, which apparently was not available to the Court at the time of the emergency motions.

[9] See OCGA § 5-6-46 (a) ("[i]n civil cases, the notice of appeal . . . shall serve as supersedeas upon payment of all costs in the trial court by the appellant").

[10] Although the Intervenors take issue with the fact that the May 13 order does not use the phrase "nunc pro tunc," we find no merit to their argument on this point. The May 13 order does vacate and withdraw the May 8 order "as of May 11, 2009," which has the same effect as an order issued nunc pro tunc.

> A court's power to amend nunc pro tunc is the power to correct inadvertent errors or omissions in the record to reflect the truth of what happened; it does not include the power to supply judicial omissions so as to include what a court might or should have decided, but did not actually so decide.

(Citation and punctuation omitted.) *Paine v. Nations*, 301 Ga. App. 97, 100 (2) (686 SE2d 876) (2009). Accordingly, "[t]he purpose of entering an order nunc pro tunc is to record some previously unrecorded action actually taken or judgment actually rendered. It may not be used to supply an order not yet made by the court." (Citations and punctuation omitted.) *Andrew L. Parks, Inc. v. SunTrust Bank*, 248 Ga. App. 846, 848 (545 SE2d 31) (2001).

At the May 11 hearing, the Intervenors "objected to a final order being entered prior to the motion to recuse hearing" relying upon USCR 25.3, which provides that

> [w]hen a judge is presented with a motion to recuse, or disqualify, accompanied by an affidavit, *the judge shall temporarily cease to act upon the merits of the matter* and shall immediately determine the timeliness of the motion and the legal sufficiency of the affidavit, and make a determination, assuming any of the facts alleged in the affidavit to be true, whether recusal would be warranted.

(Emphasis supplied.) The opposing parties also expressed "concern" regarding the trial court's entry of the May 8 order while the motion to recuse was pending and requested "out of an abundance of caution" that the court withdraw the May 8 "Final Order."

After denying the motion to recuse, the trial court recognized that "there was another issue with respect to the order . . . that the court signed." The trial court explained:

> At the time that I signed the order, I was aware of the motion to recuse. I was also aware of the dates in which the motion to recuse had been filed. And at that point in time it was very easy to look at the date stamped on the motion and see that it was untimely.[11] Very simple for a court to do.

---

[11] Under USCR 25.1, a recusal motion accompanied by an affidavit must be filed and presented to the judge

> . . . not later than five (5) days after the affiant first learned of the alleged grounds for disqualification, and not later than ten (10) days prior to the hearing or trial which is the subject of the recusal or disqualification, unless good cause be shown for failure to meet such time requirements. . . .

That is a threshhold [sic] issue that I had the right to determine, and I did that. And so I went ahead and signed the order because based [up]on the filing[ ] itself, the motion was untimely. That being said, out of [an] abundance of caution I will happily re[-]sign the [order]. That's not a problem. So I will do that.

While this pronouncement does not expressly state that the trial court was withdrawing and vacating the May 8 order, we find that such a ruling is implicit in the trial court's statement that he would re-sign the order. Obviously, there would be no need to sign a new order if the May 8 order remained in effect. Moreover, this pronouncement must be considered in its context. The Intervenors objected to the May 8 order in light of the pending recusal motion, and the Developers also requested that the trial court withdraw that order "out of an abundance of caution." The trial court echoed those words in stating that he would re-sign the order. Thus it appears that the trial court was granting the relief the parties requested.

Accordingly, as we interpret the trial court's ruling, the May 8 order was withdrawn at the time of the hearing,[12] and the court planned to sign a new order in the future. Under these circumstances, the Intervenors' subsequent appeal of that order was without effect and the trial court retained jurisdiction to enter its May 13 order nunc pro tunc. See 5 Ga. Procedure: Verdicts and Judgments § 6:15 ("An entry nunc pro tunc functions to correct the record to reflect a prior ruling made in fact but defectively recorded.").

3. The Intervenors also raise a number of issues in connection with the trial court's imposition of sanctions. They first assert that the trial court erred in awarding attorney fees under OCGA § 9-15-14 (b) without proper notice and a hearing.

Before attorney fees may be awarded against a party under OCGA § 9-15-14 (b), the party must be given notice that an award of attorney fees under that Code section is under consideration so that he or she has an opportunity to challenge the basis on which the fees are assessed.

---

The motion and affidavit cited alleged grounds occurring at either the December 15, 2008 or February 27, 2009 hearings, and the second motion to recuse was not filed until April 21, 2009, well outside these time requirements. Although the motion also took issue with the proposed amendment filed by the Developers, which was filed within the time period, the motion did not explain how that document provided a ground for the judge's recusal.

[12] Accordingly, the Intervenors' argument on appeal that the trial court entered the May 8 order in violation of USCR 25.3 is moot.

(Punctuation and footnote omitted.) *Wall v. Thurman*, 283 Ga. 533, 534 (3) (661 SE2d 549) (2008).

In this case, the trial court gave the Intervenors ample notice of its intent to consider the imposition of sanctions based upon allegations that Woodham sought $1.3 million in personal gain to drop his public interest lawsuit, even though he acknowledged that the Developers had done nothing wrong. At the December 15 hearing, the trial court specifically told Woodham to be prepared for the issues of bond validation and the possibility that sanctions, including attorney fees and a bar referral, might be imposed based upon Woodham's conduct. Woodham knew that this issue of sanctions was raised upon the court's own motion, and thus no other motion was required to give him notice that attorney fees could be imposed against the Intervenors. The fact that the hearing was continued from January 30 to February 27 does not alter this notice; neither does the court's e-mail referring to a bond validation hearing, as Woodham knew that the trial court intended to take up sanctions at the same hearing it considered the bond validation.

And although the trial court did not specifically state it was considering an award of attorney fees under OCGA § 9-15-14 (b), we find that the Intervenors received sufficient notice of the potential sanctions. A trial court may award fees under OCGA § 9-15-14 (b) if it finds:

> (1) that an attorney or party brought or defended an action, or part of an action, that lacked substantial justification; or (2) that the action, or part of it, was interposed for delay or harassment; or (3) that an attorney or party unnecessarily expanded the proceedings by other improper conduct. The statute defines "lacked substantial justification" as, "substantially frivolous, substantially groundless, or substantially vexatious."

(Footnote omitted.) *MacDonald v. Harris*, 266 Ga. App. 287, 288 (597 SE2d 125) (2004). Thus an award under OCGA § 9-15-14 (b) involves consideration of "the conduct of the party against whom an award is sought, and the conduct of that party's counsel . . . along with the impact of that conduct on the attorney fees incurred by the opposing party." (Citation omitted.) *Williams v. Cooper*, 280 Ga. 145, 147 (1) (625 SE2d 754) (2006).

Here, the Intervenors were on notice that the trial court would be considering the imposition of attorney fees on the court's own motion based upon evidence of Woodham's actions. Thus they had sufficient notice to challenge the basis for the attorney fee award in this case. Compare *Wall v. Thurman*, 283 Ga. at 534 (3) (award

reversed where attorney did not receive notice that trial court was considering an award of attorney fees against him under OCGA § 9-15-14 *or a hearing on that issue*); *Williams v. Cooper*, 280 Ga. at 147 (1) (attorney fee award reversed where divorce hearing under OCGA § 19-6-2 imposing fee award based upon financial situation gave no reasonable opportunity to challenge award under OCGA § 9-15-14 (b)).

Although Woodham was on notice that the imposition of attorney fees based upon his conduct would be considered at the February 27 hearing, he made the conscious choice not to attend that hearing. Woodham therefore rejected the opportunity to be heard on this issue. Under these circumstances, we find that the Intervenors received adequate notice and opportunity to be heard as to the appropriateness of an attorney fee award in this case.

4. The Intervenors also contend that the trial court erred in awarding attorney fees based upon a finding that Woodham had violated the Rules of Professional Conduct. But the May 21 "Final Order" states that the trial court was awarding fees under its inherent power and under OCGA § 9-15-14 (b). The trial court concluded that the intervention complaints had been filed for "an improper purpose" and in "bad faith." Thus the trial court did not award attorney fees upon a finding of unethical conduct. Although the trial court was disturbed by Woodham's conduct and stated at the February 27 hearing that it was unethical and possibly illegal, the Final Order demonstrates that the court's reliance upon that finding was confined to its decision to refer the matter to the State Bar of Georgia for further investigation. We find no error. Compare *Stevens v. Thomas*, 257 Ga. 645, 646-647 (1) (361 SE2d 800) (1987) (attorney fee award reversed where based solely and expressly upon attorney's violation of disciplinary rules).

5. The Intervenors further argue that the trial court erred in failing to make the findings necessary to support an award under OCGA § 9-15-14 (b). They also assert that the trial court erred in improperly awarding a lump sum of attorney fees.

A trial court is required "to make express findings of fact and conclusions of law as to the statutory basis" for an award of attorney fees under OCGA § 9-15-14. *Bailey v. McNealy*, 277 Ga. App. 848, 849 (1) (627 SE2d 893) (2006). The Final Order here recites the facts surrounding Woodham's suggestion that $1.3 million would make the intervention go away and his subsequent attempt in a letter to re-characterize that demand as a donation of .1 percent of the bond issue to a homeless shelter. Based upon these facts, the trial court found that the "Intervenors intervened in these bond validation proceedings for an improper purpose and, thus, acted in bad faith by demanding a $1.3 million payment from parties against whom

Intervenors had no legal claims, as a condition for dismissing [their] Complaints in Intervention." But OCGA § 9-15-14 (b) does not specifically authorize an award of attorney fees based upon a finding that litigation was instituted for an "improper purpose"[13] or a finding that a party has acted in bad faith.[14]

In *In re Serpentfoot*, 285 Ga. App. 325, 328 (4) (a) (646 SE2d 267) (2007), the defendant moved for attorney fees on the ground that the plaintiff's "conduct in seeking [a] name change was 'frivolous and an obvious attempt to use the name change statute for wrongful personal pursuits . . . ,' " but did not specify a statutory basis for the motion. The trial court found that the plaintiff's request for a name change was based upon "improper motives" and was made for "improper purposes." Id. The trial court also found that appellant "has been unreasonably and stubbornly litigious and has been frivolous in her conduct in these proceedings." Id. The trial court based its fee award to the defendant on these findings without specifying the statute it relied upon for that award. Id.

On appeal, this Court noted that while OCGA § 13-6-11 authorized an award of attorney fees for being stubbornly litigious, that statute generally only authorizes a fee award for a plaintiff. *Serpentfoot*, 285 Ga. App. at 328-329 (4) (a). The Court also found that the trial court's order did not contain the elements required for an award of attorney fees under OCGA § 9-15-14 (b), and determined that "the issue of attorney fees must be remanded for an explanation of the statutory basis for the award and any findings necessary to support it." (Punctuation and footnote omitted.) Id. at 329 (4) (a).

Here, although the trial court stated that it relied upon OCGA § 9-15-14 (b), the court failed to specify a ground for awarding attorney fees under that statute, but rather cited standards found in other comparable statutes. Although the trial court found that Intervenors' complaints were filed for an improper purpose and the Intervenors acted in bad faith, the court did not enter a finding that the complaints lacked substantial justification, that they were interposed for delay or harassment or that Woodham unnecessarily expanded the proceedings by his conduct as required under OCGA § 9-15-14 (b). Accordingly, we vacate the portion of the May 21 Final Order awarding attorney fees and remand "for an explana-

---

[13] Rule 11 of the Federal Rules of Civil Procedure authorizes the award of attorney fees based upon such a finding. We note that this Court has found that "Rule 11 and OCGA § 9-15-14 are analogous. Rule 11 authorizes the court in which an action is brought to award reasonable attorney fees and other expenses where pleadings or motions are presented for an improper purpose or where claims or defenses are without legal or evidentiary support." (Footnote omitted.) *Great Western Bank v. Southeastern Bank*, 234 Ga. App. 420, 422 (507 SE2d 191) (1998). See also Fed. R. Civ. P. 11 (b) (1)-(4).

[14] OCGA § 13-6-11 authorizes an award upon a finding of bad faith.

tion of the statutory basis for the award and any findings necessary to support it." *Serpentfoot*, 285 Ga. App. at 329 (4) (a). Cf. *Moore v. Moore-McKinney*, 297 Ga. App. 703, 711 (4) (678 SE2d 152) (2009) (where order did not cite specific statute, finding at hearing that party had expanded the litigation by "making it more difficult than it ought to be" did not support OCGA § 9-15-14 award) (punctuation omitted).[15]

Further, the Intervenors are correct that under OCGA § 9-15-14 (a) or (b), the trial court "must limit sanctions to those fees incurred because of [the] sanctionable conduct." *Harkleroad v. Stringer*, 231 Ga. App. 464, 472 (6) (499 SE2d 379) (1998). Because we have vacated the award of attorney fees, however, we need not reach the issue of whether the trial court's award of attorney fees was proper in that regard.

6. For the same reason, we need not reach the Intervenors' argument that the trial court erred in requiring them to furnish an affidavit showing payment of such fees before initiating another action in the trial court.

7. The Intervenors also argue that the trial court erred in striking their complaints and dismissing them as parties as a sanction for Woodham's conduct. In support of that sanction, the trial court found that

> Intervenors were notified and admonished at the December 15, 2008 hearing that the Court would conduct an evidentiary hearing to consider the imposition of sanctions against them, including the possibility of attorney fees and referral to the State Bar of Georgia. Nonetheless, Intervenors refused to attend the hearing.

The court then invoked its inherent powers, including those under OCGA §§ 15-1-3 and 15-6-9 (8), to dismiss the complaints in intervention finding that "the Intervenor's conduct is egregious."

But "[o]ur Supreme Court has cautioned against the use of these harsh sanctions except in extreme cases," and "we have generally held that before imposing the ultimate sanction of dismissal or default judgment, the court must first make a determination, after notice and an opportunity for hearing, that the failure to comply with [an] order was wilful." (Punctuation and footnotes omitted.) *Largo Villas Homeowners' Assn. v. Bunce*, 279 Ga. App. 524, 526

---

[15] We are aware that the trial court also purports to rely upon its "inherent powers" in awarding attorney fees. But to the extent that the trial court relied upon the express authority of OCGA § 9-15-14 (b), it must find a sanctionable basis under that statute for the imposition of fees.

(631 SE2d 731) (2006) (sanctions under OCGA §§ 9-11-12 (e) and 9-11-37 (b) (2)). See also *Whitley v. Piedmont Hosp.*, 284 Ga. App. 649, 659 (4) (644 SE2d 514) (2007) (sanctions under OCGA § 15-1-3). It appears from the trial court's order that the trial court issued this sanction based, at least in part, upon Woodham's failure to appear at the February 27 hearing when directed to do so. Although the Intervenors were on notice that sanctions, including attorney fees and bar referral, could be imposed based upon Woodham's actions in November, they were never informed or given an opportunity to be heard on the issue of whether their complaints in intervention should be dismissed based upon their failure to appear at the scheduled hearing. Accordingly, we vacate that portion of the order dismissing the Intervenors' complaints and remand for a noticed hearing on that issue.

8. The Intervenors also appeal the trial court's orders validating the bond issues, but because their standing to appeal the trial court's rulings in that regard depends upon whether they remain parties to the validation proceedings and because we have remanded that issue to the trial court for a hearing, we do not reach those issues in this appeal.

### Case Nos. A09A2312 and A10A1040

The judgments appealed in these cases are dependent upon the trial court's award of attorney fees in the May 21 Final Order. Because we have vacated that portion of the Final Order, any orders and judgments based upon the award of attorney fees would also stand vacated. Accordingly, we need not reach the issues raised in these appeals, and they are accordingly dismissed.

*Judgment affirmed in part and vacated in part, and case remanded in Case No. A09A2105. Appeals dismissed in Case Nos. A09A2312 and A10A1040. Blackburn, P. J., and Doyle, J., concur.*

DECIDED MARCH 30, 2010 —
RECONSIDERATIONS DENIED APRIL 14, 2010 —

*John F. Woodham*, pro se.

*Paul L. Howard, Jr.*, District Attorney, *Thurbert E. Baker*, Attorney General, *Ichter & Thomas, Cary Ichter, Patricia A. Roy, Hunton & Williams, Douglass P. Selby, Ashley F. Cummings, Gregory M. Evans, Jr., James E. Dearing, Jr., Michelle L. Barnett*, for appellees.

*Robert D. Feagin*, amicus curiae.