A00A2366. ANDREW L. PARKS, INC. et al. v. SUNTRUST BANK, WEST GEORGIA, N.A. et al.

(545 SE2d 31)

BARNES, Judge.

Andrew L. Parks, Inc. and Andrew Parks (collectively "Parks") appeal the judgment of the trial court granting a motion to clarify judgment that vacated an order dismissing, without prejudice, Parks' complaint against SunTrust Bank, West Georgia, N.A. f/k/a Trust Company Bank of Columbus, N.A. and SunTrust Bank Card Center ("SunTrust"). The judgment also put in effect a later filed order dismissing the complaint against SunTrust with prejudice.

The record shows that Parks sued SunTrust because SunTrust placed the company on a list of merchants whose relationship with SunTrust was terminated for cause. Subsequently, SunTrust answered the complaint denying liability and asserting the defense of failure to state a claim. After discovery, SunTrust moved to dismiss Parks' complaint under OCGA § 9-11-12 (b) (6) because it failed to state a claim on which relief could be granted. On May 14, 1999, the trial court signed an order granting this motion and dismissing Parks' complaint with prejudice. This order, however, was not filed promptly.

Then, on May 26, 1999, the trial court signed an order dismissing Parks' complaint without prejudice because he missed a docket call. This order, however, was filed promptly on May 28, 1999. On June 16, 1999, the order signed May 14, 1999, dismissing Parks' complaint with prejudice finally was filed.

After Parks refiled his complaint, SunTrust filed its motion asking the trial court to clarify its judgment by vacating the order filed May 28, so that the order filed June 16 would be effective. The order

granting this motion was signed and filed on April 26, 2000. Parks contends this order was a nullity because the motion to clarify was not filed within the same term of court in which the two earlier orders were entered and the order filed first deprived the trial court of jurisdiction to file the second order. We agree and vacate the trial court's order granting the motion to clarify its judgment.

"A judgment, although signed by a judge, is not 'entered' until it is filed with the court clerk. OCGA § 9-11-58 (b)." *Preece v. Turman Realty Co.*, 228 Ga. App. 609, 610 (492 SE2d 342) (1997). Thus, the order merely signed on May 14 was without legal effect, and the order signed on May 26 and filed on May 28 was the legally entered order that dismissed the case without prejudice when it was filed. The order signed on May 14 was a nullity because it was not filed when the case was still lawfully pending. Judgments rendered by courts without jurisdiction are void. See *Williams v. Fuller*, 244 Ga. 846, 848 (2) (262 SE2d 135) (1979).

Further, although a trial judge has "inherent power during the same term of court in which the judgment was rendered to revise, correct, revoke, modify or vacate such judgment, even upon his own motion, for the purpose of promoting justice and in the exercise of a sound legal discretion," *LeCraw v. Atlanta Arts Alliance*, 126 Ga. App. 656, 663 (191 SE2d 572) (1972), this authority does not extend beyond the same term of court, unless a motion to modify or vacate, et cetera, was filed within the same term of court. *Piggly Wiggly Southern v. McCook*, 216 Ga. App. 335 (454 SE2d 203) (1995); *Clark v. Ingram*, 150 Ga. App. 127, 128 (1) (257 SE2d 33) (1979). Here, no motion was filed within the same term of court. Therefore, the trial court's authority to vacate its first entered order, if it exists at all, must be found in the Civil Practice Act. See *Clark*, supra, 150 Ga. App. at 128 (2).

A motion to clarify is not a motion authorized by that Act, but there is no magic in the nomenclature used. Under our rules, pleadings are judged by their function and not the name given by a party. *Holloway v. Frey*, 130 Ga. App. 224, 227 (3) (202 SE2d 845) (1973). Because the motion failed to assert any statutory ground for relief from a judgment listed in OCGA § 9-11-60 (d), some other basis must be found for the motion. See *Gabel v. Revels*, 203 Ga. App. 131 (416 SE2d 103) (1992).

On appeal, SunTrust characterizes the motion as one under OCGA § 9-11-60 (g) to correct a clerical error. We find no basis in the record to support this proposition, and as the relief sought had the effect of changing Parks' substantive rights, the trial court had no authority to grant the motion to clarify. *Hopkins v. Garner & Glover Co.*, 233 Ga. App. 264, 268 (1) (504 SE2d 78) (1998).

Further, the trial court has no authority to enter this order nunc

pro tunc, because a nunc pro tunc order cannot be used to supply an action not then taken by the court. *Moseley v. Interfinancial Mgmt. Co.*, 224 Ga. App. 80, 84 (5) (479 SE2d 427) (1996). The purpose of entering an order nunc pro tunc

> is to record some previously unrecorded action actually taken or judgment actually rendered. It may not be used to supply an order not yet made by the court. A nunc pro tunc entry is an entry made now of something actually previously done to have effect of former date; . . . not to supply omitted action, but to supply omission in the record of action really had but omitted through inadvertence or mistake. The general rule is that nunc pro tunc entries are proper to correct clerical errors but not judicial errors.

(Citations and punctuation omitted.) *In the Interest of H. L. W.*, 244 Ga. App. 498-499 (535 SE2d 834) (2000).

Accordingly, the trial court's judgment vacating its order entered on May 28, 2000, must be vacated, and the case stands dismissed without prejudice.

*Judgment vacated. Blackburn, C. J., and Eldridge, J., concur.*

DECIDED JANUARY 19, 2001 —
RECONSIDERATION DENIED MARCH 30, 2001 — 

*Ronald S. Iddins,* for appellants.

*Hatcher, Stubbs, Land, Hollis & Rothschild, Gregory S. Ellington, J. Barrington Vaught,* for appellees.

### A00A2539. WEATHERBY et al. v. BARSK et al.
(545 SE2d 701)

SMITH, Presiding Judge.

Steve Weatherby and Utopian Concepts, Inc., a corporation wholly owned by Weatherby (hereinafter collectively Weatherby), brought suit against Robert Barsk, a real estate developer, and two corporations in which Barsk is an officer, Stonewall Farms, Ltd. and Heritage Creek, Inc. (hereinafter collectively Barsk). Weatherby alleged that Barsk had breached an oral agreement under which Weatherby was to furnish certain services and Barsk was required to pay him ten percent of the value of the development property. Alternatively, Weatherby sought recovery under the theory of quantum meruit for services performed. Weatherby also sought attorney fees and expenses under OCGA § 13-6-11 for Barsk's alleged bad faith.

Barsk answered, asserting several defenses. He denied the existence of any agreement; he asserted that even if such a contract existed, Weatherby was barred from recovering under the Statute of Frauds because it was not in writing; he alleged that Weatherby could not recover under a theory of quantum meruit because even if services were performed by Weatherby, they were of no benefit to Barsk; and he maintained that any services performed by Weatherby were performed either in Weatherby's employment capacity as director of economic development for Greystone Power Corporation or in his volunteer capacity as vice chairman of the Douglas County Development Authority.

Barsk moved for summary judgment, which was granted on the grounds that recovery under the contract was barred by the Statute of Frauds; that Weatherby had failed to present evidence creating a material issue of fact regarding whether Barsk "requested, accepted, or authorized any alleged services" or whether any such services were performed on behalf of Greystone Power or the Douglas County Development Authority; and that Weatherby had failed to present any evidence of the value of the services he allegedly rendered. This appeal by Weatherby ensued. We conclude that the trial court erred in finding that the alleged contract was within the purview of the Statute of Frauds. We also find that Weatherby presented sufficient evidence to create a genuine issue of material fact with regard to whether Barsk requested, accepted, and authorized the services, whether the services were performed, and the capacity in which Weatherby performed them. We therefore reverse the trial court's grant of summary judgment to Barsk.

The record shows that Barsk is a native of Sweden who moved to this country to pursue real estate investment. He owned certain parcels of land in Douglas County that he desired to develop. Weatherby was employed by Greystone Power, which sold electricity in Douglas County. He also served in a volunteer capacity as vice chairman of the Douglas County Development Authority. In addition, he was acquiring properties in east Douglas County as a personal venture, with a view toward eventually developing those properties.

The parties agree that they were introduced in 1992. They also agree that they had discussions concerning the acquisition and development of properties Barsk owned in Douglas County. But any agreement ends there.

Barsk presented an affidavit in which he stated that his dealings with Weatherby were solely in Weatherby's capacities as a representative of Greystone Power or the Douglas County Development Authority. Weatherby, on the other hand, presented an affidavit in which he stated that he dealt with Barsk in his personal capacity and that these dealings were "outside the scope of [his] employment with

Greystone Power" or his work for the development authority.

Barsk denied entering into any contract with Weatherby or authorizing Weatherby to perform any services, although he admitted having received "unsolicited suggestions" for the development and construction of a certain tract, which suggestions he believed were given in Weatherby's capacity as a representative of Greystone Power. Weatherby, on the other hand, insists that Barsk "requested the services in issue; agreed to pay for such services"; and knew that he was performing them in his individual capacity because he "expressly discussed with Mr. Barsk the fact that I was performing these services in my personal capacity and to accomplish my personal business objectives." He claims he devoted all his free time to the project and completed his contractual obligations, which included formulating and implementing development strategies for the property, conveying to Barsk the contracts necessary for assembling the tract in issue, negotiating a reduction in price on one parcel, negotiating the furnishing of site utilities and various site improvements, planning and negotiating the construction of a public road through the property, working on and procuring approval of zoning changes, and working on other facets of the property development, including its tax status.

1. The Statute of Frauds provides that "[a]ny contract for sale of lands, or any interest in, or concerning lands" is required to "be in writing and signed by the party to be charged therewith or some person lawfully authorized by him" in order to bind the promisor. OCGA § 13-5-30 (4). The services Weatherby claims to have performed under the contract with Barsk were not for the "sale of lands," nor was he claiming "any interest in" lands.[1] But the statutory language "concerning lands" raises the question of whether the alleged contract is within the purview of the statute. Weatherby contends it is not.

The parties have not cited to this court any case on all fours with this one, and we have found none. But we have reviewed cases involving oral contracts for services concerning land that have been held to be within the purview of the Statute of Frauds. This review persuades us that those cases involve the *sale* of land or conveyance of an interest in land. This case involves neither.

Barsk cites *Shivers v. Barton & Ludwig, Inc.*, 164 Ga. App. 490 (296 SE2d 749) (1982) in support of his position that OCGA § 13-5-30 (4) is not ambiguous and has been interpreted by our courts as covering any contract concerning land. But *Shivers* clearly involved the

---

[1] Weatherby merely alleges that he was to be paid a percentage of the *value* of the lands involved.

question of whether a signatory to a limited partnership agreement was in fact the agent of a third-party nonsignatory to the agreement. The limited partnership was formed in part to buy and sell real property and to acquire interests in certain tracts of land. This court applied the predecessor statute to OCGA § 10-6-2 to hold that since the agreement to sell or buy real property must be in writing, an agency to execute an agreement for the sale of property must also be in writing. Id. at 492.

Barsk also cites *Cherokee Falls Investments v. Smith*, 213 Ga. App. 603 (445 SE2d 572) (1994), on which the trial court relied, in support of his position that recovery under the alleged oral contract here is barred by the Statute of Frauds. *Cherokee Falls* involved a written addendum to a contract for the sale of land. The addendum was relied upon by the plaintiff to establish the existence of a joint venture. Although the parties' dealings in *Cherokee Falls* involved services, the parties also had dealings with each other involving various sales of land and interests in land. One section of the addendum provided that the defendant was to be paid five percent of lot sales by the venture. Id. at 604. The defendant contended that this mention of the joint venture was merely an agreement to agree upon the terms of a joint venture. Id. at 603. This court agreed, finding the addendum too indefinite to be enforceable. Id. at 605 (1). Finding that the addendum was part of a contract for the sale of land and that the addendum provision lacked certainty, this court held that it was unenforceable because "a court of equity will not decree the specific performance of a contract *involving an interest in land* unless there is a definite and specific statement of the terms of the contract." (Citations and punctuation omitted; emphasis supplied.) Id.

The services Weatherby claims to have performed for Barsk under the alleged oral contract do not involve selling or buying the land in issue and do not involve his obtaining an interest in the land. Although the phrase "concerning land" appears on its face to be extremely broad, it has been interpreted more narrowly. It is well established that certain services "concerning land" are not subject to the Statute of Frauds. Real estate brokerage contracts and other contracts for commissions based on *arranging* the sale of lands, for instance, have long been held not to be within the Statute of Frauds. See, e.g., *Stacey Realty v. Calvary Baptist Church*, 188 Ga. App. 822, 824 (2) (374 SE2d 537) (1988); *Pierce v. Deich*, 81 Ga. App. 717 (59 SE2d 755) (1950); *Cantrell v. Johnston*, 74 Ga. App. 74, 78 (2) (38 SE2d 893) (1946). We find the services allegedly contracted for and performed by Weatherby to be more analogous to those in *Stacey Realty, Pierce*, and *Cantrell* than to those in *Cherokee Falls*. For that reason, and because they did not involve the sale of land or the conveyance of an interest in land, we conclude that the alleged oral con-

tract was not subject to the Statute of Frauds and that the trial court erred in granting summary judgment to Barsk on that ground.

2. Because we have concluded that the alleged oral contract was not required to be in writing, we need not consider whether part performance took it out of the Statute of Frauds. Since the alleged oral contract need not have been in writing, we must also reverse the trial court's ruling that Weatherby was not entitled to recover damages for bad faith because he failed to show that an enforceable contract existed.

3. Even had this contract been covered by the Statute of Frauds, that statute is not a bar to relief in quantum meruit. *Llop v. McDaniel, Chorey & Taylor*, 171 Ga. App. 400, 403 (4) (320 SE2d 244) (1984). And we cannot agree with the trial court that Weatherby did not present sufficient evidence to raise questions of fact regarding whether Barsk requested, authorized, or accepted the services he alleges he performed, whether those services had any value to Barsk, or whether those services were performed in his individual capacity rather than as an agent of Greystone Power or the Douglas County Development Authority. Weatherby's affidavit establishes all those facts.

Barsk relies upon *Thornton v. Carpenter*, 222 Ga. App. 809 (476 SE2d 92) (1996) to support his assertion that his denial that Weatherby performed the services or that he authorized or accepted them was sufficient to pierce Weatherby's pleadings in this regard. That reliance is misplaced. *Thornton* involved the simple denial of an agency relationship. It has long been established that the denial of an agency relationship, made by a purported party thereto, is a statement of fact sufficient to support a motion for summary judgment *when it is uncontradicted*. Id. at 812 (2) (a). In this case, the statement was not a denial of agency, nor was it uncontradicted.

*Reid & Morgan, George C. Reid,* for appellants.
*David G. Crockett, Douglas L. Brooks,* for appellees.