686 S.E.2d 434 (2009)
In the Interest of D.C.H., a child.
No. A09A1557.
Court of Appeals of Georgia.
November 6, 2009.
*435 Bradford & Primm, Gabriel Ronald Bradford, Arcade, Dustin R. Marlowe, Gainesville, for appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Senior Asst. Atty. Gen., Elizabeth M. Williamson, Asst. Atty. Gen., Ashley Willcott, Kate McCann, for appellee.
MILLER, Chief Judge.
A juvenile court terminated the parental rights of the parents of the minor child, D.C.H. ("the child"), and awarded custody of the child to the Department of Human Resources through the Barrow County Department of Family and Children Services ("the Department"). The maternal great-grandparents, Thomas and Doris Gilder ("the Gilders"), appeal the juvenile court's order of disposition, contending that (i) the juvenile court lacked jurisdiction to award custody of the child to the Department because the child's parents had previously surrendered their rights to the child to them and (ii) the juvenile court erred in considering the Gilders' ages as a dispositive factor in denying their motion for custody. Finding no error in the juvenile court's exercise of jurisdiction or its custody award to the Department, we affirm.
"When a question of law is at issue, we owe no deference to the trial court's ruling and apply the `plain legal error' standard of review." (Citation omitted.) Suarez v. Halbert, 246 Ga.App. 822, 824(1), 543 S.E.2d 733 (2000).
The record shows that the Department filed a petition to terminate the parental rights of Katrina C. Green, the biological mother, and Steven William Hanson, the putative father, and to place custody of their minor child with the Department. The petition alleged, in pertinent part, that the child was deprived based on parental misconduct or inability; that there were no other suitable relatives willing or available to care for the child; and the Department had denied the Gilders' home for placement. Thereafter, the Gilders filed a motion to intervene and for temporary custody of the child, to which the attorneys for the Department and the child's guardian ad litem objected, arguing that placement with the Gilders was not in the best interest of the child. The juvenile court denied the Gilders' motion to intervene in part, as to the adjudicatory phase of the hearing on the petition, but granted the motion in part, as to the dispositional phase of the petition, should that phase be reached.
On September 3, 2008, the juvenile court held a hearing on the Department's petition, and at its conclusion, ruled that the child was deprived based in part on the mother's chronic and unrehabilitated use of narcotics, failure to provide support for the child or to comply with court-ordered reunification plans. Noting that the putative father also failed to file a timely legitimation petition, the juvenile court terminated both parents' rights in order to place the child for adoption in a permanent and stable home and reserved final disposition for a later hearing. On September 9, 2008, the juvenile court signed the termination order nunc pro tunc to September 3, 2008, and thereafter, the order was filed on September 17, 2008. On September 15, 2008, the parents executed a surrender of rights to the child in favor of the Gilders.
On October 31, 2008, the juvenile court held a dispositional hearing to consider suitable relative placements for the child. The Gilders' attorney objected to the proceedings and asked for a ruling. After hearing the Department's argument to the contrary, the juvenile court took the matter under advisement, and following the hearing, it entered an order of disposition awarding permanent custody of the child to the Department for the purpose of adoption. In its order, the juvenile court found that it "clearly intended the parental rights of the parents to cease when it announced its decision from the bench[ ]" on September 3, 2008.
1. The Gilders argue that the juvenile court lacked jurisdiction to proceed with *436 the dispositional hearing because the child's parents had executed a voluntary surrender in their favor before the termination order was filed. We disagree.
"The purpose of entering an order nunc pro tunc is to record some previously unrecorded action actually taken or judgment actually rendered." (Citations and punctuation omitted; emphasis supplied.) Andrew L. Parks, Inc. v. SunTrust Bank, 248 Ga.App. 846, 848, 545 S.E.2d 31 (2001).
It may not be used to supply an order not yet made by the court. A nunc pro tunc entry is an entry made now of something actually previously done to have effect of former date; ... not to supply omitted action, but to supply omission in the record of action really had but omitted through inadvertence or mistake....
Id. Here, it is undisputed that the juvenile court rendered judgment terminating the child's parental rights at the conclusion of the hearing on September 3, 2008. Although its oral ruling was not memorialized in a written order until September 9, 2008 and not filed until September 17, 2008, such order clearly stated that it was nunc pro tunc to September 3, 2008, the date of the termination hearing. The Department's attorney explained that "the only reason why it took two weeks [to be entered] was just to have it written down into the record[.]" Thus, the termination order reflected the juvenile court's intent to record a "previously unrecorded action actually taken or judgment actually rendered." Id. And as the juvenile court directed, the order was effective on September 3, 2008 when it was filed on September 17, 2008.[1] OCGA § 9-11-58(b) ("The filing with the clerk of a judgment, signed by the judge, with the fully completed civil case disposition form constitutes the entry of the judgment, and, unless the court otherwise directs, no judgment shall be effective for any purpose until the entry of the same[.]...") (emphasis supplied). See also Hinkle v. Woolever, 249 Ga.App. 249, 252, fn. 1, 547 S.E.2d 782 (2001) (by entering its written order nunc pro tunc, "the trial court caused the written dismissal to relate back to ... the date of [its] hearing and its oral ruling") (citation omitted).
Based on the foregoing, the juvenile court correctly concluded that the parents "had no rights to surrender to the [Gilders] on September 15, 2008[ ]" and properly entered its order of disposition awarding permanent custody of the child to the Department. OCGA § 15-11-103(a)(4); Suarez, supra, 246 Ga. App. at 824(1), 543 S.E.2d 733.
2. The Gilders argue in the alternative that the juvenile court abused its discretion in treating their ages as a dispositive factor in the dispositional hearing. We are not persuaded.
"A trial court's determination that placement with a relative is not in the best interest of the child will not be disturbed by this Court absent an abuse of discretion." (Citation and punctuation omitted.) In the Interest of J.W.M., 273 Ga.App. 20, 25(3), 614 S.E.2d 163 (2005).
OCGA § 15-11-103(a)(1) provides:
If, upon the entering of an order terminating the parental rights of a parent, there is no parent having parental rights, the court shall first attempt to place the child with a person related to the child by blood or marriage or with a member of the child's extended family if such a person is willing and, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child, if the court determines such placement is the most appropriate for and in the best interest of the child.

(Emphasis supplied.) "Although the statutory framework encourages relative placement, it is not an absolute requirement." (Citations omitted.) In the Interest of R.D.B., 289 Ga.App. 76, 81(2), 656 S.E.2d 203 (2007). Given the juvenile court's duty to consider the child's best interest, it is "afforded wide discretion to determine whether a child should be placed with a relative or kept in a *437 stable foster home." (Citations and punctuation omitted.) Id.
The record shows that the child came into the care of the Department on May 24, 2007 and was placed with foster-to-adopt parents. Kate McCann, the Department's case placement manager for the child, contacted the Gilders in May 2007 and January 2008 to determine if they were interested in being a placement for the child. On both occasions, the Gilders indicated that they were not interested in placement unless their adoption of the child was guaranteed. Aside from meeting the child for the first time in February 2008 during a visit initiated by McCann and a few supervised visits with the child in the spring of 2008, the Gilders last visited the child in July 2008. On the other hand, the child had a "great connection and attachment to both foster parents" and was "very much a part of their family." Priscilla Faulkner, a licensed psychologist, testified that the child's "social emotional development appear[ed] to be developing well in her foster home" and recommended "continued placement" there.
The Department conducted a home study of the Gilders' home in March 2008, in which it noted that the home was "clean but extremely cluttered," and due to the existence of a propane tank and other safety hazards in and outside the home, it requested that the Gilders remove such hazards from their home. Conflicting evidence was presented regarding whether the Gilders had removed the clutter and safety hazards outside their home following a second home study in June 2008. The Department only recommended the Gilders as a weekend visitation resource, and recommended that permanent custody of the child be placed in its care, specifically with the child's foster family.
Finding that the child has resided in the foster parents' home "for [18] of her [22] months of life[ ]" and "is attached to the foster parents who are the only primary caregivers of which the child has any memory[,]" the juvenile court concluded that placement with the Department was "the most appropriate for and in the best interest of the child." In the Interest of J.B.C., 269 Ga.App. 529, 530, 604 S.E.2d 606 (2004) (testimony that children had bonded with foster parents and had no such bond with children's aunt, coupled with the fact that aunt had not visited the children in over 18 months nor requested visitation with them, supported juvenile court's determination that it was in children's best interest to remain in the custody of the Department); In the Interest of C.L.R., 232 Ga.App. 134, 139(3), 501 S.E.2d 296 (1998) (a relative may be qualified and yet placement may not be in the best interest of the child). Although the juvenile court considered many factors, such as the Gilders' home environment and their ability to care for the child, the child's needs, and the nature of the child's relationship with the Gilders and the foster parents, the evidence supported the juvenile court's decision to award permanent custody of the child to the Department given the child's long-term placement with her foster parents and her developing "crucial attachments" to them.
Accordingly, the juvenile court did not abuse its discretion in permanently placing the child with the Department for adoption, rather than the Gilders. In the Interest of J.W.M., supra, 273 Ga.App. at 25(3), 614 S.E.2d 163; In the Interest of R.D.B., supra, 289 Ga.App. at 81(2), 656 S.E.2d 203.
Judgment affirmed.
ANDREWS, P.J., and BARNES, J., concur.
NOTES
[1] The Gilders do not contend that a civil case disposition form was not filed with the juvenile court's termination order.