**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**July 1, 2022**

# In the Court of Appeals of Georgia

A22A0507. TORRES v. TORRES.

GOBEIL, Judge.

We granted Angel Torres, Jr.'s (the "husband") application for discretionary review of a trial court order purporting to clarify the provision of his divorce decree pertaining to the portion of his military retirement benefits owed to his ex-wife, Lori Torres (the "wife").[1] On appeal, the husband argues that the trial court (1) erred by clarifying the provision awarding retirement benefits; (2) erroneously modified the equitable division of the husband's retirement benefits; and (3) erred by ordering the husband to reimburse the wife for the amount of retirement benefits to which she was entitled from the date of the husband's retirement to the entry of the trial court's order. For the reasons set forth below, we reverse the trial court's order.

---

[1] See Case No. A22D0040 (application granted Sept. 24, 2021).

The record shows that parties married in 1991, and divorced in September 2011. The trial court entered a "Final Judgment and Decree of Divorce" on September 19, 2011, which expressly incorporated by reference the parties' settlement agreement and ordered the parties to comply with the terms and provisions therein. The agreement included the following provision (hereinafter referred to as the "provision"), which is at issue in this case: "5. *RETIREMENT BENEFITS*[:] As equitable division of property, [the h]usband shall cooperate in the [w]ife having spousal retirement benefits from the military based upon eighteen years of marriage and paygrade E8 using high three retirement computation." The settlement agreement also provided the wife periodic alimony payments for several years. The wife did not appeal the final decree.

A little more than six years later in October 2017, the husband retired from the military. Soon thereafter, the wife contacted the Defense Finance and Accounting Service ("DFAS") to request her portion of the husband's military pension. DFAS acknowledged receipt of the wife's application for payment in a letter, dated January 31, 2018, but stated, in pertinent part:

> The court order you submitted provides for a division of retired/retainer pay by means of a hypothetical amount of retired pay as of the time of

2

divorce. However, the court order does not provide enough information to calculate the amount of the hypothetical retired pay. You must obtain a certified copy of a clarifying order which awards the former spouse a fixed dollar amount or percentage of the member's actual disposable retired pay. . . . The wife submitted a letter to the trial court, dated July 30, 2018,[2] in which she sought a "Certified Copy of Clarifying Order of Military Retirement Benefits/Pay" and requested that the court include survivor benefit pay in the event the husband died.[3] The trial court construed the letter as a petition for relief. The husband filed a motion to dismiss, arguing that the wife's request constituted an impermissible modification of the parties' agreement. The trial court denied the motion, finding that the ambiguity created by the decree could not be resolved without evidence as to the parties' intent on the percentage or fixed amount contemplated and ordered a hearing on the issue. After an unsuccessful court-ordered mediation, a hearing was held.

At the hearing, the wife denied that she and the husband renegotiated the division of the military pension after the March 5, 2010 hearing, but she did not testify as to what percentage split they had agreed. The husband did not concede that he agreed to a 50-50 split, but instead testified that he could not remember. Counsel for the wife noted that "there is some disagreement over the calculation . . . . But if

---

[2] The clerk of court filed the letter on September 14, 2018.

[3] The wife later withdrew her request for survivor benefits.

the number is even close to what we've calculated as being what we anticipate the marital portion is, the debt is over $48,000 at this point[.]" Neither party presented evidence explaining the "marital" or "spousal" portion of the husband's retirement benefits.

After the hearing, the trial court issued the order now on appeal, finding that the absence of the agreed-upon terms for a percentage split of the pension created an ambiguity, thus it had authority to clarify using parol evidence "to correct the inadvertent omission." The parol evidence upon which it relied was the husband's former counsel's statement at a pre-trial hearing on March 5, 2010 during the parties' divorce proceedings:

> Mr. Torres is a member of the United States Navy, and the parties have been married for 18 years. There's going to be one-half of the retirement benefits as of now, 18 years of marriage, that is going to be awarded to Ms. Torres, the wife. And we'll cooperate and effectuate that occurring.

> But also with respect to this agreement, the parties' intention [sic] and stipulate and agree that what they're going to do is go ahead and enter this written settlement agreement. It will be executed by them. It will become the final settlement agreement.

Based on its review of the hearing transcript, the court found: "At all times, the parties understood [the retirement provision] to entitle [the wife] to one-half of the marital portion of the pension. At no time has [the husband] argued or produced any evidence that the parties changed the agreement." Accordingly, the court granted the wife's request to clarify and ordered the parties to prepare a Military Pension Division Order ("MPDO") that equally divided the marital portion of the military pension based on the language from the agreement: "eighteen (18) years of [the husband's] creditable service and paygrade E8 using high three retirement computation." It also ordered the husband to pay $1,000 per month to the wife until DFAS began to pay her directly and to cover whatever arrearage existed from the date she should have first received payment, November 2017. This appeal followed.

1. The husband first argues that the wife was precluded from seeking relief pursuant to OCGA § 9-11-60 (g) because she sought a modification, rather than a correction of a clerical error.

> While a settlement agreement, like any other contract, may be reformed based on a mutual mistake of the parties, once the settlement agreement is incorporated into a final decree, a party may not attack that judgment by seeking to change the settlement agreement. The party must attack the judgment itself through one of the acceptable means outlined in OCGA § 9-11-60. . . . Once the settlement agreement has been

5

incorporated into a final decree, the parties' obligations can be affected only by means of an action addressing the underlying divorce decree itself.

*Lockamy v. Lockamy*, 302 Ga. 111, 112 (805 SE2d 5) (2011) (citations and punctuation omitted). Here, the settlement *had* been incorporated into a final decree and the parties did not contest the retirements benefits provision until the present action over six years later. Accordingly, options for seeking relief from such a judgment are limited. OCGA § 9-11-60 (f).[4] We conclude that no such option was invoked successfully in this case.

As an initial matter, the wife's request to "clarify" and the trial court's subsequent order do not clearly state upon what authority they, respectively, pursued or issued the "clarification." Here, the wife did not seek to set aside the final judgment pursuant to OCGA § 9-11-60 (d) (motion to set aside).[5] However, the

---

[4] Under OCGA § 9-11-60 (f), "[a] judgment void because of lack of jurisdiction of the person or subject matter may be attacked at any time. Motions for new trial must be brought within the time prescribed by law. In all other instances, all motions to set aside judgments shall be brought within three years from entry of the judgment complained of." However, clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time . . . ." OCGA § 9-11-60 (g).

[5] OCGA § 9-11-60 (d) provides that a judgment may be set aside based on "(1) [l]ack of jurisdiction over the person or subject matter; (2) [f]raud, accident, or mistake or

husband maintains, and the wife concedes on appeal, that her letter requesting

clarification was based on OCGA § 9-11-60 (g), which is an option available at any

time, but is only authorized for the correction of clerical mistakes.

The dissent contends, on the other hand, that the parties did not raise OCGA

§ 9-11-60 below,[6] and further contends that we should construe the wife's petition as

one for a declaratory judgment. Although declaratory judgments can be used to

establish parties' rights and obligations under divorce decrees, *Weaver v. Jones*, 260

Ga. 493, 493 (1) (396 SE2d 890) (1990), it does not appear in this case that the wife

or the trial court invoked the Declaratory Judgment Act (OCGA § 9-4-1 et. seq.). For

instance, the husband filed a motion to dismiss for failure to state a claim. In its order

denying the motion, the trial court did not characterize the wife's petition as one for

declaratory relief, but continued to describe her request as seeking "clarification" of

the settlement agreement. Moreover, there are statutory requirements that must be

---

the acts of the adverse party unmixed with the negligence or fault of the movant; or (3) [a] nonamendable defect which appears on the face of the record or pleadings. . . ."

[6] Indeed, the wife did not cite any statutory authority in her initial petition. However, her counsel filed a "Brief in Support of [the wife's] Case," in which he argued that the trial court was authorized to "look to the court transcript to correct what can only be described as an inadvertent omission." At the hearing on the wife's petition for relief, the husband argued extensively that OCGA § 9-11-60 did not provide the wife with an avenue for relief.

7

followed under the Declaratory Judgment Act that were not met, reinforcing that the Act was not invoked, or at least not invoked properly, in this case. See OCGA § 9-4-1 et seq. For example, parties to a declaratory judgment action are entitled to a jury trial if the petition raises an issue of disputed fact. OCGA § 9-4-6. Here, in its order denying the husband's motion to dismiss, the trial court found that the settlement agreement contained an ambiguity that could only be resolved by looking to competing evidence of the parties' intent. Had this truly been a declaratory judgment action, the husband would have been entitled to a jury trial on this issue — an option that does not appear to have been presented here.

Since the wife seeks to defend the trial court's order on appeal as a clarification authorized under OCGA § 9-11-60 (g), we focus our analysis on that provision. "If words, sentences, or paragraphs are omitted from a judgment, and if there is no factual dispute between or among the parties about such error or omission, the judgment may be corrected under [OCGA § 9-11-60 (g)]." *Park v. Park*, 233 Ga. 36, 38 (209 SE2d 584) (1974). Our Supreme Court has explained that

> ordinarily a judgment should be modified under [OCGA § 9-11-60 (g)] only where the clerical error or omission is obvious on the face of the record. . . . However, [the Court] has recognized an exception to this general principle where there has been a hearing on a motion to correct

8

the judgment, and the evidence compels the conclusion that the omission was in fact a clerical error.

*Cagle v. Dixon*, 234 Ga. 698, 700 (217 SE2d 598) (1975).

Here, the alleged clerical error or omission is not "obvious on the face of the record." *Cagle*, 234 Ga. at 700 (citation and punctuation omitted). See *Ekhorutomwen v. Jamison*, 356 Ga. App. 807, 809 (849 SE2d 235) (2020) (reversing trial court's order altering monthly child support payment where, "[a]lthough the Child Support Addendum and Child Support Worksheet showed a different amount [than the amount included in legitimation order], the trial court's order contained no reference to either the worksheet or the addendum" and noting that, under the circumstances, the child support amount in the original order "is conclusive"). So, the question becomes whether the "evidence compels the conclusion that the omission was in fact a clerical error." *Cagle*, 234 Ga. at 700. In this case, the husband did not admit that he agreed to a 50-50 split of his retirement benefits, but stated that he could not remember. The wife did not offer direct testimony as to the percentage split, but stated that the parties had not renegotiated the issue of the retirement benefits after the March 2010 hearing. Neither party mentioned issuance of an MPDO, nor did the wife offer evidence as to what portion of the pension was "marital" or "spousal."

9

And, the parties continued negotiating various terms of the settlement agreement during the 17 months following the 2010 hearing and the entry of the final decree in 2011. These terms included child support, spousal support, and visitation. Notably, at the 2021 hearing, the parties did not agree on the amount of the arrearage, evidencing continued disagreement as to how much of the pension the wife was entitled. When viewed together, this evidence does not *compel* the conclusion that the omission was a clerical error.[7] Id. Compare *Park,* 233 Ga. at 38 (affirming trial court's judgment amending the parties' original divorce decree to add paragraph that trial court found "was omitted inadvertently through a clerical oversight, and [ ] the inclusion of the paragraph had been agreed to by both parties").

Moreover, in order to remedy the supposed clerical error, the trial court here did much more than supply a missing provision. Specifically, the court ordered the husband to prepare an MPDO that equally divides the marital portion of the husband's military pension and made a determination as to how the martial portion of the husband's military pension should be calculated. Neither of these provisions were discussed at the 2010 hearing. Accordingly, the trial court could not have added

---

[7] Further, we cannot conclude from the record that any omission was not a strategic decision to achieve compromise for settlement.

10

these provisions as the mere correction of a clerical error, as "the relief sought had the effect of changing [the wife's] substantive rights." *Andrew L. Parks, Inc., v. SunTrust Bank*, 248 Ga. App. 846, 847 (545 SE2d 31) (2001). See *Morgan v. Morgan*, 288 Ga. 417, 419 (1), (2) (704 SE2d 764) (2011) (reversing trial court's order holding husband in contempt for violating terms of divorce decree and finding that trial court impermissibly modified terms of decree by "supplying the missing percentage allocation of [h]usband's military retirement benefits, [and in so doing,] the trial court . . . did more than construe or clarify imprecise language in the [settlement] agreement"); *Porter-Martin v. Martin*, 280 Ga. 150, 150-151 (625 SE2d 743) (2006) (concluding that trial court had no authority to modify husband's stated income in divorce decree, as it was a substantive matter that OCGA § 9-11-60 (g) did not reach).

As to the wife's contention that she sought clarification of the divorce decree, in the order on appeal, the trial court cited several cases[8] for the proposition that a court may always clarify and interpret its own orders. However, those cases involved

---

[8] Specifically, the court cited *Davis v. Davis*, 250 Ga. 206 (296 SE2d 722) (1982); *Ward v. Ward*, 236 Ga. 860 (226 SE2d 52) (1976); and *Roberts v. Roberts*, 229 Ga. 689 (194 SE2d 100) (1972).

a trial court's authority to *clarify,* not modify, an existing order in the context of a contempt proceeding.[9] Outside of a contempt action,

> a trial judge has inherent power during the same term of court in which the judgment was rendered to revise, correct, revoke, modify or vacate such judgment . . . for the purpose of promoting justice and in the exercise of a sound legal discretion, but this authority does not extend beyond the same term of court, unless a motion to modify or vacate, et cetera, was filed within the same term of court.

*Andrew L. Parks, Inc.*, 248 Ga. App. at 847 (citation and punctuation omitted). Here, it is undisputed that the wife did not file a motion to modify or vacate the final decree within the same term of court, and "[a] motion to clarify is not a motion authorized by [the Civil Practice] Act[.]" Id. Consequently, the wife's motion was not the proper vehicle for her to pursue the relief sought.

In short, we find that the wife failed to invoke any procedural mechanism through which the trial court would have been authorized to clarify the settlement agreement.

---

[9] See, e.g., *Davis*, 250 Ga. at 206-207; *Ward*, 236 Ga. at 860; *Roberts*, 229 Ga. at 690.

2. In light of our holding in Division 1, we need not address the husband's remaining claims of error.

*Judgment reversed. Pinson, J., concurs. McFadden, P. J., dissents.*

A22A0507. TORRES v. TORRES.

MCFADDEN, Presiding Judge, dissenting.

In open court, the parties announced, through counsel, that they had settled their divorce case. Prominent, if not preeminent, among the provisions dividing their assets was an agreement — announced by the appellant husband's counsel — that his military retirement would be divided 50/50. But this was in 2010, and the parties understood that he would not retire for several years.

The settlement agreement was subsequently written up, executed by the parties, and incorporated into a final decree. The decree did include a provision for division of retirement benefits. But that provision omitted the 50/50 language or any other specification of the parties' shares. So it lacked an essential term and was ambiguous on its face. Consequently when husband did retire and wife applied for her share of the benefits, she learned that it was inoperative.

She petitioned the trial court for relief, which the court granted. Husband appealed. He seeks the windfall of entirely removing from the divorce decree the term that is undoubtedly his most significant financial concession.

Neither the parties nor the trial court expressly proceeded under OCGA § 9-11-60 (g). The wife did not specify the theory under which she was proceeding. OCGA § 9-11-60 (g) was not raised until the husband filed his Brief of Appellant in this court. It was left to the trial court to identify the proper legal theory.

The cases cited in her order were contempt cases in which the trial courts had exercised their authority to "interpret and clarify [their] own orders." E.g. *Davis v. Davis*, 250 Ga. 206, 207 (296 SE2d 722) (1982).

> A court may not modify a previous decree in a contempt order. However, a court may always interpret and clarify its own orders. The test to determine whether an order is clarified or modified is whether the clarification is reasonable or whether it is so contrary to the apparent intention of the original order as to amount to a modification. The trial court has the power to see that there be compliance with the intent and spirit of its decrees and no party should be permitted to take advantage of the letter of a decree to the detriment of the other party.

*Davis*, 250 Ga. at 207 (citations and punctuation omitted). It is true that that authority is usually exercised in contempt cases. But I am aware of no statute or case law limiting it to such cases.

On the contrary, that authority can be invoked by way of a petition for declaratory judgment. *Hardman v. Hardman*, 295 Ga. 732, 736 (3) (a) (763 SE2d 861) (2014); *Weaver v. Jones*, 260 Ga. 493, 493 (1) (396 SE2d 890) (1990); *Royal v. Royal*, 246 Ga. 229, 230 (271 SE2d 144) (1980); *Bache v. Bache*, 240 Ga. 3, 3 (2) (239 SE2d 677) (1977).

Under the declaratory judgment statutes, trial courts have the authority "to declare rights and other legal relations of any interested party petitioning for the declaration, whether or not further relief is or could be prayed, in any civil case in which it appears to the court that the ends of justice require that the declaration should be made[.]" OCGA § 9-4-2 (b). Their authority to "interpret and clarify [their] own orders," *Davis,* supra, falls within that statutory authority. And that authority to interpret and clarify their own orders is necessarily over and above their general authority to issue declaratory judgments in other contexts.

Courts must sometimes hold that a contract fails for omission of an essential term, see *Moss v. Moss*, 265 Ga. 802 (463 SE2d 9) (1995), or even that a statute is

3

void for vagueness, *State v. Johnson*, 270 Ga. 111 (507 SE2d 443) (1998). But I am aware of no prior case in which a court has so held (or been directed on remand to so hold) with regard to one of its own orders. The authority to "interpret and clarify [their] own orders," *Davis,* supra, is sufficient to forestall such a miscarriage.

As detailed below, the trial court exercised her authority correctly. Contrary to the majority I see no requirement set out in the declaratory judgment statutes that has been omitted. I question whether a case in which a trial court is called upon to interpret and clarify its own order "involves the determination of issues of fact triable by a jury" under OCGA § 9-4-6. But regardless, the husband did not ask for a jury trial. The statutes providing for declaratory judgments are "to be liberally construed and administered." OCGA § 9-4-1.

So rather than analyze the trial court's order in the context of OCGA § 9-11-60 (g), I would conclude that the trial court had the authority to enter the order at issue in this appeal as a declaratory judgment. I would affirm the trial court's ruling that the parties' settlement agreement incorporated into the decree was ambiguous. And I would hold that the trial court correctly applied the rules of contract construction to clear up that ambiguity. So I would affirm the trial court's order on this issue as well. But because no evidence supports the trial court's award of temporary benefits or the

4

calculation of the husband's arrearage, I would vacate and remand that part of the trial court's order.

Alternatively, if the case is analyzed under OCGA § 9-11-60 (g), I would hold that the trial court was also authorized to grant relief under that provision. But I would again vacate and remand the award of temporary benefits and the calculation of the husband's arrearage.

In sum, I would affirm in part and vacate in part. So I respectfully dissent.

1. *Exercising her authority to enter a declaratory judgment, the trial court correctly construed the divorce decree.*

This proceeding began when the wife, who was pro se at the time, wrote a letter to the court seeking a "clarifying order." The trial court treated the letter as "a petition for relief." The court conducted a hearing on the petition, heard testimony from the wife and the husband and argument of counsel, and entered a final order. The court never specified that she was treating the wife's petition for relief as a petition under OCGA § 9-11-60 (g) or any other statute. The first time that statute was invoked was in the husband's appellate brief in this court. So I would not analyze the case under that statute, and, in particular, I would not reverse the trial court for failing to comply with that statute's requirements.

5

But "[a] declaratory judgment is an appropriate means of ascertaining one's rights and duties under a contract and decree of divorce." *Bache v. Bache*, 240 Ga. 3, 3 (2) (239 SE2d 677) (1977). "Relief by declaratory judgment shall be available, notwithstanding the fact that the complaining party has any other adequate legal or equitable remedy or remedies." OCGA § 9-4-2 (c). See also *Hardman v. Hardman*, 295 Ga. 732, 736 (3) (a) (763 SE2d 861) (2014) (reversing grant of summary judgment that had been entered against a father who had filed for declaratory judgment and contempt based on a divorce decree); *Weaver v. Jones*, 260 Ga. 493, 493 (1) (396 SE2d 890) (1990); *Royal v. Royal*, 246 Ga. 229, 230 (271 SE2d 144) (1980). Concurring fully and specially in *Hardman*, Justice Melton wrote, "the trial court . . . failed to fulfill its duty to provide the parties with clarity when faced with a proper declaratory action by [f]ather[.]" 295 Ga. at 74. So I would hold that the trial court properly exercised her authority to examine the settlement agreement. See *Bache*, 240 Ga. at 3 (1).

"The controlling principle to be applied when interpreting a divorce decree which incorporates the parties' settlement agreement is to find the intent of the parties by looking to the four corners of the agreement and in the light of circumstances as they existed at the time the agreement was made." *Doritis v. Doritis*, 294 Ga. 421,

6

423 (3) (754 SE2d 53) (2014) (citations and punctuation omitted). "[W]here there is ambiguity, we must apply well-settled rules of contract construction." *Cahill v. United States*, 303 Ga. 148, 150 (810 SE2d 480) (2018). That is precisely what the court did here, and we review the court's order de novo. *Knott v. Knott*, 277 Ga. 380, 381 (1) (589 SE2d 99) (2003).

> A settlement agreement incorporated into a divorce decree is construed according to the same rules that govern contractual interpretation in general, with the cardinal rule being to ascertain the intention of the parties. Because the settlement agreement [here] is facially ambiguous, the trial court may look to outside circumstances to determine the parties' intent. And the record here contains at least some evidence to suggest that the parties did intend the [wife to have 50 percent of the husband's retirement benefit]. . . .

*Howard v. Howard*, 302 Ga. 451, 453 (3) n. 2 (807 SE2d 379) (2017) (citations and punctuation omitted).

The evidence here includes counsel for the husband reading the terms of the parties' settlement into the record. Specifically, at the March 5, 2010 hearing, counsel for the husband announced that the parties had "reach[ed] an agreement as to all issues," that he would read the terms into the record, and that the parties would "prepare a settlement agreement that effectuates [the] terms." Prominent, if not

7

preeminent, among the terms the husband's attorney read into the record was that "there's going to be one-half of the retirement benefits as of now, 18 years of marriage, that is going to be awarded to . . . the wife. And we'll cooperate and effectuate that occurring."

Then, at the October 13, 2020 hearing on the wife's petition for relief, the trial court questioned the husband as follows:

> THE COURT: A question for you is: In March of 2010, are you denying that the intent of the provision that was read into the record was to award [the wife] some kind of spousal benefit as an equitable division of property?
>
> HUSBAND: I can't speak to that, your Honor, right now, and the reason why is I was in that pipeline. I was actually not living in—I was living in Virginia or California—I can't remember exactly where I was living —I flew back, looked at the paperwork, they ran me through the whole gamut—the judge ran us through it, *I agreed*, and then, you know, I jumped on a plane and flew out the next day, so I can't really say that, yeah, I remember exactly the specifics of that agreement.
>
> THE COURT: Were you present when your attorney . . . read into the record what the agreement was?
>
> HUSBAND: Yes, I was.
>
> THE COURT: Do you recall hearing him state that there would be a 50/50 split of your retirement benefits as equitable division of property?
>
> HUSBAND: I know it's in the record. I know it's in the transcripts.

8

THE COURT: Do you think it was mistakenly put in the transcripts?

HUSBAND: I can't speculate about what happened ten years ago.

(Emphasis added.)

The husband argues that the parties renegotiated the retirement provision in the time between the announcement in open court of the parties' settlement agreement and the entry of the decree. But he points to no evidence of such renegotiation. On the contrary, the wife testified at the 2020 hearing that the parties did not attempt to renegotiate the division of the miliary pension. And although the husband testified that the parties continued negotiations about extending spousal support while the wife pursued a bachelor's degree instead of the associate's degree she originally sought, as well as the date the wife and the children would move out of state, he never testified that the parties attempted to renegotiate the division of the military pension.

To hold that the parties intended anything other than the wife having 50 percent of the husband's retirement benefits "would render [the retirement] provision[] of the divorce agreement meaningless." *Knott*, 277 Ga. at 381 (2). "The construction which will uphold a contract in whole and in every part is to be preferred. . . ." OCGA § 13-2-2 (4).

9

For these reasons, I would affirm the trial court's construction of the contract.

2. *Arrearage.*

But I would vacate and remand the award of temporary benefits and the calculation of an arrearage. No evidence supports them, only representations of counsel.

3. *OCGA § 9-11-60 (g).*

Even if the order on appeal is to be treated as an order under OCGA § 9-11-60 (g), I would affirm (other than the award of temporary benefits and the calculation of the husband's arrearage for the reason detailed above). That statute authorizes trial courts to correct "at any time" "errors [in judgments] arising from oversight or omission."Under that statute, a "trial court retains the authority to correct 'clerical mistakes' and errors 'arising from oversight or omission' at any time, either sua sponte or by motion." *Jones v. Jones*, 298 Ga. 762, 765 (1) (787 SE2d 682) (2016). "'[C]lerical mistake' refers to an oversight or omission, either obvious on the face of the record or plainly demonstrated by the evidence." Id. (citation omitted). See also *Tremble v. Tremble*, 288 Ga. 666, 669 (1) (706 SE2d 453) (2011) (the omission of words from a judgment is a clerical error under OCGA § 9-11-60 (g)).

Our Supreme Court has explained that

ordinarily a judgment should be modified under [OCGA § 9-11-60 (g)] only where the clerical error or omission is obvious on the face of the record. . . . However, [the Court has] recognized an exception to this general principle where there has been a hearing on a motion to correct the judgment, and the evidence compels the conclusion that the omission was in fact a clerical error.

*Cagle v. Dixon*, 234 Ga. 698, 700 (217 SE2d 598) (1975).

Such is the case here. A provision for dividing an asset is obviously incomplete if it omits any direction about how that asset is to be divided. Of course the omission here was sufficiently nonobvious to have been overlooked. But by definition the same is true of all clerical errors.

After the 2020 hearing, the trial court found that the written settlement agreement incorporated into the divorce decree inadvertently omitted the previously agreed-upon percentage split of the husband's military pension and was thus incomplete. This finding is supported by the evidence recounted above as well as by statements of husband's counsel at the 2020 hearing that "the way that the attorneys wrote it in this particular agreement gives a methodology of calculation, but they left out certain factors required by [the Defense Finance and Accounting Service]. . . ."

11

and "[t]hey just left out the pertinent information that would need to be included." This record supports the trial court's findings.

There was no evidence to the contrary. Contrary to the majority there was no reason for the wife to offer evidence as to what portion of the pension was marital or spousal. As to that issue, the retirement benefits provision in the divorce decree is sufficient. It specifies that 18 years worth of his pension is marital property. (That specification dovetails with the parties' agreement to not finalize their divorce for 17 months, until they had been married 20 years, so that the wife would qualify for lifetime medical benefits.)

It is true that the husband testified without contradiction that they had agreed to certain modifications regarding support. But as noted above, the undisputed evidence establishes that there had been is no such agreement regarding the retirement benefits provision.

More fundamentally, the majority erroneously reads the "compels the conclusion" language from *Cagle v. Dixon*, 234 at 700, to authorize us to apply a de novo standard of review to the trial court's fact finding. Citing *Cagle,* the majority holds, "the alleged clerical error or omission is not 'obvious on the face of the record" and so the wife must show that the evidence compels the conclusion. Nothing in

12

*Cagle* or the cases on which it relies stands for the proposition that we may displace the trial court as fact finder. In *Cagle*, the trial court held no hearing, so the "general rule"—that a judgment should be modified under the statute only when the error or omission is obvious on the face of the record— applied. *Cagle*, 234 Ga. at 700.

We apply an any evidence standard of review to a trial court's factual findings. See generally, *Singh v. Hammond*, 292 Ga. 579, 581 (2) (740 SE2d 126) (2013). And our Supreme Court has repeatedly affirmed their fact finding authority in the context of clerical errors.

In *Smith v. Smith*, 230 Ga. 238 (196 SE2d 437) (1973), the trial court conducted a hearing where the nonmoving party admitted that the agreement that was made the judgment of the court omitted certain words that the parties had intended to be included. Our Supreme Court held that the trial court had the authority to correct the judgment and reversed the trial court's order concluding that it lacked that authority. Id.

In *Park v. Park*, 233 Ga. 36 (209 SE2d 584) (1974), our Supreme Court affirmed a trial court's order that amended a judgment to include a paragraph that the trial court found had been "omitted inadvertently through a clerical oversight[, and which] both parties [had agreed to include]." Id. at 37. The Supreme Court held that

13

since there was no evidence in the record refuting the trial court's finding that the parties had agreed to the inclusion of the omitted paragraph, the judgment had to be affirmed. Id. at 38. Nothing in these three cases allows an appellate court to act as fact finder.

Like the Supreme Court in *Park*, this court in *Sofran Peachtree City v. Peachtree City Holdings*, 272 Ga. App. 851 (614 SE2d 111) (2005), affirmed a trial court's correction of a judgment when the appellant failed to point to evidence creating a factual dispute as to the existence of an erroneous omission. There, we held that the trial court was authorized to correct a summary judgment order that failed to reserve the matter of the amount of attorney fees. The trial court had made a factual finding that, when drafting the original summary judgment order, he had—through oversight or omission—failed to reserve the issue. We held that because the appellant "cited no evidence in the record creating a factual dispute as to the trial court's own admission that its failure to reserve the matter of the amount of attorney fees for final determination was due to oversight or omission[,]" the trial court was authorized under OCGA § 9-11-60 (g) to correct the omission. Id. at 854. Cf. *Porter-Martin v. Martin*, 280 Ga. 150, 152 (625 SE2d 743) (2006) (OCGA § 9-11-60 (g) did not apply

14

because record showed alleged error was neither a clerical error nor an error arising from oversight or omission but instead was a purposeful choice).

As to conclusions of law, this court previously has applied an abuse of discretion standard when reviewing trial court orders on OCGA § 9-11-60 (g) motions. See *Mullinax v. State Farm Mut. Auto. Ins. Co.*, 303 Ga. App. 76, 77, 79 (2) (692 SE2d 734) (2010); *Sanson v. State Farm Fire & Cas. Co.*, 276 Ga. App. 555, 556 (623 SE2d 743) (2005). And, as noted above, typically, we apply an any evidence standard of review to a trial court's factual findings. See generally *Singh*, 292 Ga. at 581 (2).

But we need not grapple with the correct standard of review here. As detailed above, the husband's testimony that he agreed to the terms of the settlement agreement when read into the record by his attorney at the 2010 hearing, as well as the statements by husband's attorney at the 2020 hearing, including that the drafting attorneys "just left out the pertinent information," are fatal to his case. Regardless whether reviewed under a (newly created) compelled-by-the-evidence standard, the abuse-of-discretion standard, or the any-evidence standard, the evidence admits of only one result: the parties intended a 50/50 split of the retirement benefits. *Sanson*,

276 Ga. App. at 557 (if evidence compels a conclusion of error, it follows that the trial court does not abuse its discretion in correcting the error).

And since the husband has not pointed to evidence "to refute [the] finding[s] by the trial judge[,]" *Park*, 233 Ga. at 38, the evidence compelled the conclusion and the trial court did not abuse her discretion in finding that the divorce decree contained an error of omission. So the trial court was authorized under OCGA § 9-11-60 (g) to correct the divorce decree. And as detailed above, the evidence supports the trial court's factual finding that the omission should be corrected by supplying the missing percentage of fifty percent.

4. *Conclusion*.

In sum, I would hold that the trial court properly exercised her authority to enter a declaratory judgment and correctly construed the divorce decree. Alternatively I would hold that the trial court properly granted relief under OCGA § 9-11-60 (g). In either scenario, I would hold that the award of temporary benefits and the calculation of an arrearage is not supported by the evidence. So I would vacate and remand that portion of the trial court's order. For these reasons, I respectfully dissent.